1   Yar R. Chaikovsky (SBN: 175421)
    ychaikovsky@mwe.com
2   Philip Ou (SBN:  259896)
    pou@mwe.com
3   McDERMOTT WILL & EMERY LLP
    275 Middlefield Road, Suite 100
4   Menlo Park, CA  94025-4004
    Telephone:      +1 650 815 7400
5   Facsimile:      +1 650 815 7401

6   Attorneys for Defendant
    NEWEGG INC.

7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  SITE UPDATE SOLUTIONS, LLC,            FILED UNDER SEAL

12              Plaintiff,                 CASE NO.  5:11-CV-03306-PSG

13        v.                               DEFENDANT NEWEGG INC.'S NOTICE
                                           OF MOTION AND MEMORANDUM IN
14  ACCOR NORTH AMERICA, INC., ET AL.,     SUPPORT OF ITS MOTION FOR
                                           DECLARATION OF EXCEPTIONAL
15              Defendant.                 CASE AND AWARD OF FEES

16                                         Date:  January 15, 2013
                                           Time:  10:00 A.M.
17                                         Dept. 5, 4TH FLOOR
                                           Judge:  Honorable Paul Singh
18

19

20  AND RELATED COUNTERCLAIMS

21

22

23

24

25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

Newegg, Inc.'s Motion For Declaration of              CASE NO.  5:11-CV-03306-PSG
Exceptional Case and Award of Fees

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................... 2

II.     LEGAL STANDARDS ...................................................................................... 3

III.    STATEMENT OF RELEVANT FACTS ........................................................... 4

     A.      The Complaint and Site Update's Early Nuisance-Value, Shake-Down Settlements .......................................................................................... 4

     B.      Plaintiff Forces Newegg to Waste Litigation Resources in the Eastern District of Texas .......................................................................... 4

     C.      Site Update's Nuisance-Value Settlements Come to a Halt ................... 5

     D.      Plaintiff's Failed Effort in Revising its Claim Construction in the Northern District of California is Affirmative Proof of its Bad Faith and Objectively Baseless Claim Construction Positions ...................... 6

     E.      This Court Confirms that Plaintiff's Claims were Objectively Baseless ............... 6

     F.      Site Update and its Parent Acacia's Unreasonable Post-Markman Negotiations with Newegg ..................................................................... 7

     G.      Site Update Forces Newegg to Waste Litigation Resources Opposing its Motion to Dismiss .......................................................................... 8

IV.     THIS CASE IS EXCEPTIONAL BECAUSE IT WAS BROUGHT IN BAD FAITH ........................................................................................................ 8

     A.      Plaintiff Filed This Shake-down Litigation for the Improper Purpose of Obtaining Nuisance-Value Settlements ................................... 8

         1.      Site Update Extorted Nuisance-Value Settlements From Multiple Defendants ........................................................................ 9

         2.      Newegg Refused to be Exploited by Site Update ..................... 10

         3.      Site Update's Tactics Follow a Pattern of Extortion from its Parent Company Acacia to File Nuisance Litigations ........................... 11

V.      THIS CASE IS EXCEPTIONAL BECAUSE PLAINTIFF'S INFRINGEMENT CLAIMS WERE OBJECTIVELY BASELESS ........................................... 12

     A.      Site Update Alleged a Means-Plus-Function Claim but Failed to Follow Well-Established Means-Plus Function Law ..................................... 13

         1.      Plaintiff Completely Ignored the Table of Files within the Table of Search Engines ........................................................................ 13

         2.      Plaintiff Completely Ignored Fundamental Problems of Indefiniteness in the Claim it Selected to Allege for Infringement .......... 15

     B.      Site Update Completely Ignored the Intrinsic Record By Alleging that the "Website Database" in Claim 8 Could be the Website Itself ................... 16

**TABLE OF CONTENTS**
**(continued)**

Page

VI.     UNDER THE CIRCUMSTANCES, THE COURT SHOULD AWARD
        REASONABLE ATTORNEY'S FEES AND COSTS TO NEWEGG ............................ 17

VII.    CONCLUSION ........................................................................................................ 18

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

Page

4

*Adjustacam LLC v. Amazon.com, Inc,. et al,*
      Case No. 6:10-cv-00329-LED (E.D. Tx) ................................................................ 7

5

*Aristocrat Techs. Austl. Pty. Ltd. V. International Game Tech.,*
      521 F.3d 1328 (Fed. Cir. 2008).......................................................................... 13

6

*ArrivalStar S.A., et al. v. Meitek Inc., et al,*
      Case No.  2:12-cv-01225-JVS (C.D.Cal) ............................................................. 13

7

*Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.,*
      393 F.3d 1378 (Fed. Cir. 2005).............................................................................. 4

8

9

*Central Soya Co. v. Geo. A. Hormel & Co.,*
      723 F.2d 1573 (Fed. Cir. 1983)............................................................................... 3

10

*Digitech Images Technologies, LLC v. Newegg, et al.,*
      Case No. 8:12-cv-01688-ODW-MRW (C.D. Cal) ............................................... 7

11

12

*Eon-Net LP v. Flagstar Bancorp,*
      652 F.3d 1314 (Fed. Cir. 2011).......................................... 3, 9, 10, 11, 16, 17

13

*Finisar Corp. v. DirecTV Group, Inc.,*
      523 F.3d 1323 (Fed. Cir. 2008) ........................................................................... 13

14

15

*MarcTec v. Johnson & Johnson,*
      664 F.3d 907 (Fed. Cir. 2012)....................................................................... 3, 16

16

17

*Old Reliable Wholesale, Inc. v. Cornell Corp.,*
      635 F.3d 539 (Fed. Cir. 2011)................................................................................ 4

18

*Spectros Corp. v. Thermos Fisher Scientific,*
      Case No. 4:09-cv-01996-SBA (N.D. Cal) ........................................................... 13

19

20

21

## FEDERAL STATUTES

22

35 U.S.C. § 285 ........................................................................... 1, 3, 4, 8, 12, 18

23

24

25

26

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1

2  **TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

3  YOU ARE HEREBY NOTIFIED that on January 15, 2013 at 10:00 a.m. in Courtroom 5, 4th

4  Floor of the San Jose Division of the United States District Court for the Northern District of

5  California, located at 280 South 1st Street, San Jose, California 95113, Defendant Newegg Inc.

6  ("Newegg") will move for a declaration that the above captioned matter be deemed an exception

7  case and award Newegg its attorney fees pursuant to 35 U.S.C. § 285.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

I.      **INTRODUCTION**

From the outset, Newegg has maintained a steadfast position that Site Update's infringement claims were objectively baseless and asserted in bad faith for the sole-purpose of obtaining nuisance-value settlements.  Indeed, Site Update's parent company and the puppet-master behind this suit, Acacia Research Corporation, has developed a pattern of such extortion-like tactics.  The underlying facts of this case demonstrate that it is exactly the type of shake-down litigation having an "indicia of extortion" that the Federal Circuit has affirmed as "exceptional".  Site Update quickly demonstrated its bad faith, shake-down litigation strategy by ███████████████████████████ while maintaining nuisance-value settlement demands far below the normal high costs of defending a patent litigation on others Defendants, such as Newegg, who refused to be extorted by this non-practicing entity.

Site Update confirmed its objectively baseless infringement theories by serving identical infringement contentions on all Defendants, devoid of any detail as to how Newegg (or any other Defendant) infringed.  To make matters worse, it completely ignored well-settled means-plus-function law, despite making the pre-suit decision to only assert claim 8—a means plus function claim.  It cited to a generic computer program term, "CGI scripts", as the proposed structure for the majority of the disputed terms in briefing in the Eastern District of Texas, only to add more, but still insufficient, structure after Defendants pointed out the egregiousness of Plaintiff's position in its Texas briefing.

Site Update's second bite of the apple still was not enough.  This Court adopted the majority of Defendants' proposed constructions at the July 20, 2012 Markman and invited summary judgment of indefiniteness on four distinct terms.  And while Newegg recognizes that mere success at Markman or summary judgment alone may not be sufficient for a Court to deem the case exceptional, Newegg respectfully submits that this case is much more than a situation of Plaintiff being on the losing end of the merits.  This is a case where Plaintiff had no chance on the merits, knew it did not, but filed suit anyway for the sole purpose of extracting nuisance-value

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

settlements.  The procedural history, supporting evidence, and Markman result all evidence that this suit was brought in bad faith and objectively baseless, much like the underlining cases of the recent Federal Circuit decisions in *Eon-Net* and *MarcTec*, which will be further discussed below.

Finally, which is of additional concern to Newegg, this shake-down lawsuit is not an independent event, but rather one in a pattern of meritless lawsuits brought and controlled by Acacia.  Although Acacia is not a direct party in this case, it certainly is the puppet-master behind this hostage and other frivolous lawsuits against Newegg.  As a result, Newegg believes that Acacia should be added under an alter-ego theory to any judgment rendered against Site Update and will address that issue with the Court at the appropriate time.

## II.     **LEGAL STANDARDS**

District Courts are authorized to award reasonable attorney fees to a prevailing party in a patent case if the court determines that the case is "exceptional."  35 U.S.C. § 285.  The Patent Act includes this provision "to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit." *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983). Those monetary outlays include all "sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit." *Id.*

Courts apply a two-step analysis to award attorney fees under § 285.  First, the court must determine whether the prevailing party has proved by clear and convincing evidence that the case is exceptional.  Second, if the Court finds the case exceptional, it must determine whether an award of attorney fees is justified.  *See Eon-Net LP v. Flagstar Bancorp,* 652 F.3d 1314, 1323-1324 (Fed. Cir. 2011).

A case may be declared exceptional under § 285 where there has been "willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil Procedure 11, or like infractions." *MarcTec*, 664 F.3d at 916 (citation omitted). Even without misconduct, district courts may award attorney fees under § 285 if the litigation is: (1) brought in subjective bad faith;

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

and (2) objectively baseless. *Old Reliable Wholesale, Inc. v. Cornell Corp.,* 635 F.3d 539, 543–44 (Fed. Cir. 2011) *(quoting Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.,* 393 F.3d 1378, 1381 (Fed. Cir. 2005)).  *See also Eon-Net LP,* 652 F.3d at 1324.  Infringement allegations are objectively baseless when "no reasonable litigant could reasonably expect success on the merits." *Brooks Furniture,* 393 F.3d at 1382.  *See also Eon-Net LP,* 652 F.3d at 1325 (Affirming that Eon-net pursued objectively baseless infringement claims because "the written description clearly refutes Eon-net's claim construction.")

III.   **STATEMENT OF RELEVANT FACTS**

A.   **The Complaint and Site Update's Early Nuisance-Value, Shake-Down Settlements**

Site Update filed suit against Newegg and thirty-four other Defendants in the Eastern District of Texas in May 2010, alleging patent infringement of claim 8—a means plus function claim—of U.S. Patent No. RE40,683.  Site Update amended its Complaint three times, ultimately suing thirty-seven Defendants, alleging infringement against each based on their use of the XML Sitemaps and robots.txt protocols to update internet search engine databases with current content from their websites.

Not long after Defendants filed their Answers and Counterclaims in late September 2010, Site Update began dismissing defendants ████████████████████████  The Court dismissed MSNBC on October 14, 2010 pursuant to an Agreed Motion for Dismissal with Prejudice[1].  [Dkt Nos. 351, 355].  Site Update then dismissed Defendants Salesforce.com, Inc.,  Accor North America, Inc., Nissan North America, Inc., and Deli Management, Inc. ██████ ████████████████████████████████████████████  [Dkt Nos. 369, 377, 430, 450]

B.   **Plaintiff Forces Newegg to Waste Litigation Resources in the Eastern District of Texas**

On November 3, 2010, the majority of Defendants filed a thoroughly reasoned, heavily

[1] Despite long outstanding discovery requests and several follow up requests from Newegg's counsel, Site Update never produced ███████████████████ and refused to do so when Newegg requested it for purposes of this fee motion.

documented motion to transfer the case to the Northern District of California.[2]  [Dkt. Nos. 373].

In response, Site Update did not meaningfully oppose, filing a ***two-page response*** consisting of

***five sentences of argument*** that ultimately conceded that "Plaintiff is agreeable to the transfer if

the Court deems that such transfer is in the interests of justice of all parties."  In view of

Plaintiff's effective acquiescence to transfer, Defendants requested Plaintiff to agree to transfer.

Plaintiff refused.

Several months passed without resolution of Defendants' transfer motion.  Defendants

grew concerned that it would incur substantial litigations costs preparing for a Markman in the

Eastern District of Texas when the case was destined for the Northern District of California.

Defendants requested Site Update to jointly move the Court to vacate the claim construction dates

pending disposition of its six-month old motion to transfer, but Plaintiff refused.  On March 30,

2011, Defendants filed a motion requesting this relief [Dkt. No. 476], but were denied.

Defendants were forced to spend significant litigation costs on Markman preparation in order to

demonstrate how frivolous Plaintiff's infringement claim was and to move for summary judgment

to dispose of the case.  By the time the Court granted Defendants' motion to transfer on June 8,

2011 [Dkt No. 503], Site Update had already filed its Opening Claim Construction Brief [Dkt.

No. 494], and Defendants had filed their Responsive Brief [Dkt. No. 500] and a Motion for

Summary Judgment on Indefiniteness [Dkt. No. 501].  This briefing additionally wasted resources

as claim construction would be re-briefed in the Northern District of California after Plaintiff

changed its claim constructions.

C.      **Site Update's Nuisance-Value Settlements Come to a Halt**

Several months before the initial case management conference in this Court, a number of

additional defendants were dismissed ██████████████████████████████

████████████████████████████████████████████████████

███████████████ [Dkt Nos. 417, 427, 428].  ████████████████

████████████████████████████████████████████████████

---

[2] Four Defendants did not join the motion, but did not oppose.

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

1    ███████████████    [Dkt Nos. 487, 488, 509, 510].  From then on, over the next year of

2    litigation and through the July 20, 2012 Markman, ████████████████████████

3    ████████████████    [Dkt No. 599], leaving twenty-two Defendants in the case.

    D.    **Plaintiff's Failed Effort in Revising its Claim Construction in the Northern District of California is Affirmative Proof of its Bad Faith and Objectively Baseless Claim Construction Positions**

        This case was eventually assigned to this Court and an initial case management conference was held on December 15, 2011, setting a Markman for July 20, 2012.

        In its initial claim construction brief filed in the Eastern District of Texas, despite asserting a means-plus-function claim against Defendants (claim 8 of the '683 patent), Plaintiff completely failed to follow well-settled principles of means-plus-function law.  For six of the eight means-plus-function disputed terms, Plaintiff repeatedly argued that the terms were linked to, and required, only one structure—a CGI script, which is another name for a generic computer program that is executed by a web server.  After Defendants pointed out the egregiousness of Plaintiff's position in their Responsive Brief, Plaintiff took a second bite of the apple and changed its claim construction positions, even admitting that "Plaintiff has carefully considered Defendants' positions and has modified certain of its constructions to include additional structure, in addition to the CGI script" at the outset of its Opening Claim Construction Brief before this Court.  [Dkt. No. 605].  Defendants, in turn, were forced to substantially amend its Responsive Claim Construction Brief from the Eastern District of Texas to address these substantially revised, but still severely deficient and contrary to law, claim constructions from Plaintiff.

    E.    **This Court Confirms that Plaintiff's Claims were Objectively Baseless**

        A Markman was held on July 20, 2012 where this Court orally issued claim constructions that confirmed that Site Update's infringement claim was objectively baseless.  For example, this Court held that the construction of "website database" could not merely be the website itself, as alleged for infringement by Site Update.  Ou Decl. ¶ 2, Exhibit A, 2012-07-20 Markman Transcript at 154:7-10.  This Court also recognized that even the "more structure" in Plaintiff's redrafted, California claim constructions still ran afoul with settled means-plus-function case law.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

The Court's claim construction included the structure (e.g., the Table of Files and Table of Search Engines that are the heart of the alleged invention) and disclosed algorithms that Defendants argued needed to be included. *Id.* at 154:11-155:22. Finally, this Court invited Defendants to present a motion for summary judgment on indefiniteness on four terms because of concerns that the terms were indefinite. *Id.* at 157:5-19.

F.    **Site Update and its Parent Acacia's Unreasonable Post-Markman Negotiations with Newegg**

Shortly after the Markman, Site Update offered to dismiss its claims against Newegg with prejudice if Newegg agreed to dismiss its counterclaims without prejudice. Newegg expressed concern that a mere walk away was insufficient under the unique and exceptional circumstances of this litigation: (1) when the asserted claim was on the brink of invalidity; (2) with the affirmation that Site Update never had a reasonable infringement theory based on the oral constructions at Markman; (3) after having spent two years and hundreds of thousands of dollars defending this frivolous suit; and (4) without adequate protection from future lawsuits re-asserting the same patent against use of the same protocols. Newegg was further concerned with a troubling pattern by Site Update's parent company, Acacia, in filing nuisance lawsuits against Newegg, among others, that like this one had no merit from its inception.

In a strikingly similar scenario as this case, Adjustacam LLC, another Acacia subsidiary, abandoned its case after two years of litigation against Newegg in the Eastern District of Texas, when it was unable to extort a nuisance-value settlement after successfully doing so to multiple other Defendants sued concurrently with Newegg. *Adjustacam LLC v. Amazon.com, Inc,. et al*, Case No. 6:10-cv-00329-LED (E.D. Tx). On October 11, 2012, Newegg filed a Motion for Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses against Adjustacam. In an effort to settle the current case as well as both the Adjustacam case and another recently filed case between Newegg and another Acacia subsidiary[3], Newegg and Acacia

---

[3] Acacia Research Corp., the parent company of Site Update and prior assignee of the patent-in-suit, recently filed another patent-infringement lawsuit against Newegg through Acacia subsidiary, Digitech Images Technologies, LLC. *Digitech Images Technologies, LLC v. Newegg, et al.*, Case No. 8:12-cv-01688-ODW-MRW (C.D. Cal). Digitech filed two dozen lawsuits on October 1 and 2, 2012, after its initial lawsuit was dismissed for misjoinder.

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

1    discussed a global resolution between the Parties.  The Parties did not reach an agreement.

2          G.      **Site Update Forces Newegg to Waste Litigation Resources Opposing its**
3                       **Motion to Dismiss**

4          After efforts to reach a resolution with Acacia failed, Site Update sent Newegg an

5    executed covenant not to sue in an effort to divest this Court's jurisdiction over Newegg's

6    counterclaims, particularly its invalidity counterclaims in view of the Court's invitation to brief

7    summary judgment of the asserted claim on indefiniteness.  Newegg's counsel explained to Site

8    Update that its covenant not to sue was deficient and requested several times that Site Update

9    amend its covenant to address Newegg's concerns.  Site Update refused and filed a motion to

10   dismiss.  [Dkt. No. 642].

11         Having a deficient covenant not to sue that did not adequately protect Newegg from an

12   infringement suit based on, at the time, even its current website and usage of the same XML

13   Sitemaps and robots.txt protocols that were the basis of Site Update's frivolous infringement

14   contentions, Newegg was forced to spend litigation resources preparing an Opposition to Site

15   Update's motion to dismiss.  [Dkt. No. 645].

16         Two days prior to the due date for Site Update's Reply Brief, counsel for Site Update sent

17   Newegg a revised covenant not to sue that addressed Newegg's concerns it had been stating for

18   weeks and that Newegg ultimately outlined in its Opposition papers.  In view of the revised

19   covenant, Newegg agreed to a joint stipulation to dismiss its counterclaims without prejudice.

20   [Dkt No. 646].

21         The Court issued an Order Dismissing Claims Between Site Update and Newegg on

22   November 9, 2012.  Now before the Court is Newegg's motion for declaration that this case is

23   exceptional under 35 U.S.C. § 285 and to award Newegg's its reasonable attorneys fees incurred

24   in defending against this meritless lawsuit.

25   **IV.     THIS CASE IS EXCEPTIONAL BECAUSE IT WAS BROUGHT IN BAD FAITH**

26         A.      **Plaintiff Filed This Shake-down Litigation for the Improper Purpose of**
27                    **Obtaining Nuisance-Value Settlements**

28

McDermott Will & Emery LLP
ATTORNEYS AT LAW
MENLO PARK

1    Plaintiff's campaign to extract monies based on the '683 Patent began when it sued 35

2    Defendants in a single lawsuit and continued through immediate settlements with Defendants for

3    nuisance values to avoid exposing its baseless infringement claims and the invalidity of its patent.

4    The foregoing conduct makes this case exceptional.  *See Eon-Net LP v. Flagstar Bancorp,* 652

5    F.3d 1314 (Fed. Cir. 2011).  In *Eon-Net*, the Federal Circuit affirmed an exceptional case finding

6    and award of attorneys' fees to the accused infringer (Flagstar) where Eon-net filed its

7    infringement complaint against Flagstar "to extract a nuisance value settlement by exploiting the

8    high cost imposed on Flagstar to defend against Eon-Net's baseless claims."  *Id.* at 1327.  ████

9    ███████████████████████████████████████████████████████████████████████

10   ███████████████████████████████████████████████████████████████████████

11   ██████████████████████████████████████).  The Federal Circuit was critical of this practice:

12       Viewed against Eon-Net's $25,000 to $75,000 settlement range, it
         becomes apparent why the vast majority of those that Eon-Net

13       accused of infringement chose to settle early in the litigation rather
         than expend the resources required to [prove non-infringement].

14       Thus, those low settlement offers—less than ten percent of the cost
         that Flagstar expended to defend the suit—effectively ensured that

15       Eon-Net's baseless infringement allegations remained unexposed,
         allowing Eon-Net to continue to collect additional nuisance value

16       settlements.

17   *Id.*

18   ███████████████████████████████████████████████████████████████████████

19   ██████████████████████████████████████████████████████████████

20   █████████████████████████████████████████████████████████  Newegg was among

21   the many who drew a line in the sand, despite the opportunity to rid itself of this nuisance case for

22   far less than a cost of defense.  Unable to extract a nuisance-value settlement from Newegg, Site

23   Update was forced to voluntarily dismiss its claims after the Court affirmed that its infringement

24   claims were objectively baseless from the start.  These facts render this case exceptional.

25       1.    Site Update Extorted Nuisance-Value Settlements From Multiple
               Defendants

26

27   Only weeks after Defendants answered Site Update's Third Amended Complaint (at

28   which point there were 37 named Defendants), ████████████████████████████████

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1  ████████████████████████████████████████ Ou

2  Decl. ¶ 3, Exhibit B. ████████████████████████

3  ████████████████████████████████████ Ou Decl. ¶¶

4  4-6, Exhibits C-E.

6       A strong joint defense group and even stronger recognition of the frivolous nature of Site

7  Update's suit and infringement allegations thwarted Site Update's plans to continue extracting

8  nuisance-value settlements.  Despite low numbers on the table, many Defendants refused to

9  succumb to Site Update's tactics and settle, confident that they could dispose of the case through

   summary judgment motions.

11       By the time Site Update waived its white flag by volunteering to dismiss all remaining

12  Defendants in August 2012, ████████████████████████

13  █████████████████████████████████████████████

14  ██████████████.[4]  Ou Decl. ¶¶ 7-11, Exhibits F-J. ████████████████

15  ███████████████████████████████████████████

16  ███████████████████████████████[5]  Ou Decl. ¶¶ 12-14,

17  Exhibits L-M.

19       Site Update's settlements are consistent with the nuisance-value settlements in *Eon-Net*.

20  Like the patent owner in *Eon-Net*, Plaintiff employed the strategy of exploiting the high cost of

21  defending against Plaintiff's baseless claims, effectively ensuring that the frivolous nature of

22  those claims was not exposed.  *Eon-Net LP,* 653 F.3d at 1327.

           2.     Newegg Refused to be Exploited by Site Update

24       Newegg recognized the nuisance-value lawsuit from the beginning and refused to settle

25  with Site Update, despite the unbalanced cost of litigation defense versus Site Update's nuisance

26  _____

27  [4] ███████████████████████████████████████
    ████████████████████████████    ██████████████

28  ██ ████████████████████████████████████████████
   ████████████████████████████████

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

1   demands. ███████████████████████████████████████████████

2   ██████████████████████████████████████. Ou Decl. ¶ 15. █████████

3   ██████████████████████████████████████████████████████████

4   ██████████████████████████████████████████████ Ou Decl. ¶

5   16, Exhibit N. ████████████████████████████████████

6   ██████████████████████████████████████████████████████████

7   ███████████████████████████████████████████████████ the

8   demands in *Eon-Net* that the district court and Federal Circuit recognized as having an "indicia of

9   extortion". *Eon-Net LP*, 653 F. 3d at 1327.

> 3.   Site Update's Tactics Follow a Pattern of Extortion from its Parent
>       Company Acacia to File Nuisance Litigations

As discussed in the Statement of Relevant Facts, Site Update is a subsidiary or controlled

entity of Acacia.  There is no question that Acacia controls Site Update and reaps the benefits

when its extortion tactics yield nuisance-value settlements.  Indeed, Acacia (and not Site Update)

has released press releases regarding Site Update's settlements, for example, between its "Site

Update Solutions, LLC subsidiary" and defendant Red Hat, Inc.  Ou Decl. ¶ 17, Exhibit O (April

29, 2011 press release entitled "Acacia Subsidiary Settles Patent Litigation with Red Hat").  And

the "decision-makers" that have surfaced through this litigation are purport to be Acacia or

Acacia related executives.  For example, Dooyong Lee executed Site Update's November 7, 2012

Covenant Not to Sue Newegg in connection with this litigation, which identifies Mr. Lee's title

with Site Update as "CEO."  Ou Decl. ¶ 18, Exhibit P.  Conspicuously, Acacia's website for

Acacia Research Group LLC also identifies Mr. Lee as its Chief Executive Officer and Acacia's

website for Acacia Research Corporation identifies Mr. Lee as its Executive Vice President.  Ou

Decl. ¶ 19-20, Exhibits Q-R.  In correspondences between Newegg and Site Update's counsel,

Mr. Goldstein, regarding the aforementioned covenant not to sue and this fee motion, Mr.

Goldstein copied Steve Wong having an e-mail address of swong@acaciares.com (emphasis

added).  Ou Decl. ¶ 21, Exhibit S.  Acacia Research Group LLC's website identifies Mr. Wong as

one of its Vice Presidents of Business Development and Licensing.  Ou Decl. ¶ 22, Exhibit T.

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

Thus, while Site Update may contend that it is its own separate and independent entity, it cannot hide from the alter-ego relationship between it and Acacia.

Acacia, through its other subsidiaries or controlled entities, has further demonstrated its pattern of filing shake-down lawsuits against Newegg through the aforementioned Adjustacam and Digitech cases.  While the Digitech litigation has only recently commenced, the Adjustacam case followed a similar, and equally, if not more troubling, procedural history as this one.

In Adjustacam, like here, Plaintiff sued dozens of Defendants for infringement of a single patent, and shortly thereafter, began its pattern of extorting nuisance value settlements from Defendants in amounts far below the cost of defense.  Kazmerski Decl ¶ 2. ████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████

████████████████████████ Kazmerski Decl ¶ 4.  Eventually, as in this case, Plaintiff conceded the meritless nature of its claims asserted against Newegg and offered to dismiss them with prejudice.  Kazmerski Decl ¶ 5.

Finally, as in this case, Newegg incurred more than two years of attorneys fees and costs defending another baseless suit against Acacia controlled entity Adjustacam, exceeding over $350,000 in attorneys and expert fees, and has subsequently filed a motion for fees under 35 U.S.C. §285 against Acacia/Adjustacam.  Kazmerski Decl ¶ 6.

## V.     THIS CASE IS EXCEPTIONAL BECAUSE PLAINTIFF'S INFRINGEMENT CLAIMS WERE OBJECTIVELY BASELESS

This lawsuit was frivolous from the very outset because, as explained below, Site Update's infringement theories, and corresponding proposed claim constructions, were so far a field and unsupported by evidence that they were objectively baseless.  Plaintiff chose to assert claim 8—a means-plus-function claim—and only claim 8, of the '683 patent against Newegg and

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1   the other thirty-six defendants.  Site Update never disputed that claim 8 was a means-plus-

2   function claim, but rather, chose to completely ignore well established means-plus-function law

3   when 1) determining its infringement theory when it served its infringement contentions in

4   October 2010 and 2) proposing and arguing its unsupportable claim constructions, both in the

5   Eastern District of Texas pre-transfer and later before this Court.  Such a blatant disregard of

6   reasonableness and the law, especially considering the patent's intrinsic record and the accused

7   instrumentalities, demonstrate that Site Update's theories were **objectively baseless**.  *See Eon-*

8   *Net*, 653 F.3d at 1326.[6]

9  A.  **Site Update Alleged a Means-Plus-Function Claim but Failed to Follow Well-**
      **Established Means-Plus Function Law**

10

11     As previously discussed in the Statement of Relevant Facts, Site Update's proposed claim

12   constructions and briefing in the Eastern District of Texas and revised constructions and briefs

13   before this Court were wholly inconsistent with well established claim construction principles and

14   means-plus-function law.  When a patentee uses means-plus-function claim language, the

15   specification must expressly link the claimed function to a specific disclosed structure.  *Aristocrat*

16   *Techs. Austl. Pty. Ltd. V. International Game Tech.,* 521 F.3d 1328, 1333-1334, 1338 (Fed. Cir.

17   2008).   Moreover, in computer-implemented means-plus-function claim limitations, the structure

18   must include the specific algorithms linked to performing the claimed function.  *Finisar Corp. v.*

19   *DirecTV Group, Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008).  Plaintiff repeatedly ignored well-

20   settled principles, and instead of proposing specific algorithms or structure, Plaintiff proposed

21   constructions reciting general computer-related structure, such as web servers and CGI scripts.

22   This Court recognized Plaintiff's misapplication of the law by including the specifically linked

23   structure and algorithms that Defendants set forth in their proposed constructions when it quickly

24   issued constructions from the bench at the conclusion of the July 20, 2012 Markman.

25   ─────────────────────

26   [6] Newegg fully expects Site Update to point to district courts that have denied a motion for attorneys fees
post *Eon-Net*, such as *ArrivalStar S.A., et al. v. Meitek Inc., et al¸* Case No.  2:12-cv-01225-JVS (C.D.Cal)

27   and *Spectros Corp. v. Thermos Fisher Scientific,* Case No. 4:09-cv-01996-SBA (N.D. Cal).  However,
these cases do not change the precedent and controlling law under *Eon-Net* and *Marc-Tec* or undercut the
egregiousness of Site Update's infringement and claim construction positions that are on par with those in

28   *Eon-Net and Marc-Tec* where an award of fees was upheld by the Federal Circuit.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

1.    <u>Plaintiff Completely Ignored the Table of Files within the Table of Search Engines</u>

This Court quickly and correctly recognized that the "invention" of the '683 Patent required a Table of Files within a Table of Search Engines, despite Plaintiff's attempt to avoid what the law specifically requires:

> The Court:    Well perhaps you're right that the creation and modification is agnostic as to whether there's a Table of Files or a Table of Search Engines in the database.  But this would certainly suggest that somewhere in this construction, I have to explain that the way that this invention works is that there is a Table of Files and a Table of Search Engines. Right?
>
> Ms. Lipski:    Well, I believe there has to be a website database.  I don't think there has to be a Table of Files and a Table of Search Engines.
>
> The Court:    But isn't the – isn't the inventor teaching this very specific structure, and how can ignore what is clearly linked?
>
> Ms. Lipski:    The inventor is giving a specific preferred embodiment, and they go so far as to –
>
> The Court:    Yeah, but this is a 112(6) claim, right?
>
> Ms. Lipski:    I understand that, your honor…

Markman Tr. 74:7-25.

Although Plaintiff tried to shift the issue away from well settled means-plus-function law, which requires the specifically linked Table of Files within the Table of Search Engines as structure to perform at least some of the claimed functions in claim 8, and onto the issue of the construction of the disputed claim term "website database," this Court quickly rejected such a view:

> Ms. Lipski:  Well, I think that the claim language that was used by the patentee is "website database," so I think that's kind of where the issue you're concerned about comes in.  What is claimed is a website database not necessarily using this Table of Files and Table of Search Engines specifically, and "website database" is, of course, not a means-plus-function term.
>
> The Court:  No.  But what's claimed as means-plus-function term, it just seems to me that the inventor is specifically saying to the ordinary skilled artisan, "this is what structure performs one of these functions," and I'll grant you, it may not be this particular function[s], it might be somewhere else, but since you brought this up, I'm just as a loss as to how I can ignore that specific teaching that this is linked to that.

Markman Tr. 75:11-25.

The Court correctly included the specific Table of Files and Table of Search Engines in its claim constructions for the "means for creating" and "means for identifying" disputed terms. Markman Tr. 154:11- 155:22. These constructions completely obliterated Plaintiff's infringement position because Newegg does not have a Table of Files within a Table of Search Engines, or anything close to its equivalent, with respect to its website and how it updates search engines.

A basic understanding of the invention disclosed in the '683 patent recognizes that a key aspect of the invention is the Table of Files and Table of Search Engines. And a basic understanding of means-plus-function law recognizes that the specific disclosures of the Table of Files and Table of Search Engines, as described in the specification, were specifically linked to the means for creating and means for modifying functions and were **<u>necessary</u>** to any proper claim construction of those disputed terms. That Plaintiff completely ignored these basic principles demonstrates that it's claims were objectively baseless.

> ### 2.   <u>Plaintiff Completely Ignored Fundamental Problems of Indefiniteness in the Claim it Selected to Allege for Infringement</u>

This Court recognized several fundamental problems in the validity of the **only asserted claim** in this litigation. In its briefing, Defendants raised four separate and independent reasons for why claim 8 was indefinite. Following arguments at the Markman, this Court invited Defendants to present a motion for summary judgment on indefiniteness for the disputed terms "means for transmitting", "means for parsing", "means for updating", and "information". The Court declined to construe these four terms because of concerns that the terms are indefinite. Markman Tr. 157:15-19.

The Court's recognition of these invalidity problems with the **only asserted claim** further evidences that Plaintiff's case was objectively baseless. This is not a situation of newly discovered information that bears weight on the validity of a patent, such as discovering

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

1   invalidating prior art that Plaintiff was previously unaware of.  To the contrary, when selecting to

2   assert claim 8 and recognizing that it was a means-plus-function claim, Plaintiff should have

3   recognized that the '683 Patent lacked sufficient disclosed structure (or arguably no disclosure at

4   all) for the means for parsing, means for transmitting, and means for updating terms.  Again,

5   Plaintiff chose to assert a means-plus-function claim, but completely ignored the governing law in

6   doing so.  Such blatant disregard, **from the outset**, cannot be ignored and further evidences that

7   Site Update's claims were objectively baseless.

8           B.      **Site Update Completely Ignored the Intrinsic Record By Alleging that the
                    "Website Database" in Claim 8 Could be the Website Itself**
9

10          Putting aside Site Update's complete disregard for means-plus-function law, Plaintiff also

11  sought to improperly construe the term "website database" broad enough to include the website

12  itself to supports its baseless infringement read.  But as the Federal Circuit has recently pointed

13  out in *MarcTec* and *Eon-Net*, a proposed construction that is so lacking in any evidentiary support

14  that the assertion of the construction is unreasonable reflects a lack of good faith.  *MarcTec,* 664

15  F.37 at 919.  *See also Eon-Net*, 653 F.3d at 1326 ("[B]ecause the written description refutes Eon-

16  Net's claim construction, the district court did not clearly err in finding that Eon-Net pursued

17  objectively baseless infringement claims.")

18
19          Such is the case here.  Newegg has already addressed the clear linkage of Table of Files

20  and Table of Search Engines —which make up the website database disclosed in the

21  specification—to certain means-plus-function terms in dispute.  Similar to how Plaintiff

22  completely ignored that linkage, Plaintiff sought a claim construction for "website database"

23  broad enough to include the website itself, despite absolutely no support in the specification for

24  such a construction and numerous citations in the specification and file history supporting the

25  distinction between the website database and website itself.

26          Indeed, the Court recognizes that the "separate and distinct" issue was key to this dispute:

27          Court:  Well, let me ask you about the office action, the July office action which caught
                    my attention as well.  Doesn't that certainly suggest that there needs to be some baseline
28                  against which a comparison is being made?  Isn't that what's being discussed there?

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

And wouldn't that suggest that in order to have a baseline, you have to have to something which is independent of the site itself, or the resource itself?

Markman Tr. 88:6-14.

Court:  Okay.  So as long as there was something that's separate or independent – well, as long as there's something more than just the site itself, you don't have a problem with a construction that would allow that – or that would, that would – let me back up a second – that would require that the site and the database be distinct from one another?

Do you see what I'm getting at?  The thing I'm struggling with here is it just seems to me if you're having a website database, maybe the website itself hosts the database, but the database has to be something more than the site.

And as long as we agree on that, there really isn't much controversy.

Markman Tr. 88:25-12.

The Court offered a compromise between Plaintiff and Defendants' proposed constructions that would capture this important distinction that the Court recognized, and despite Defendants agreeing to it, Plaintiff refused.  The Court issued a construction making clear this distinction – "record of resources on the website, *other than the resources of the website themselves.*" (emphasis added).

Here again, Plaintiff offered a claim construction position that runs completely afoul of the intrinsic record in order to shoe-horn in Newegg's website into Plaintiff's baseless infringement theory.  And again, the Court recognized the flaws with Plaintiff's unsupported constructions and correctly construed "website database", which further demonstrates that there is no objective basis to assert that Newegg infringes Claim 8 of the '683 Patent.

## VI.   UNDER THE CIRCUMSTANCES, THE COURT SHOULD AWARD REASONABLE ATTORNEY'S FEES AND COSTS TO NEWEGG

This case is exactly the type of extortionist case that the Federal Circuit has recently affirmed to be exceptional.  The procedural history, submitted evidence, and Markman result clearly demonstrate that this case was brought in bad faith under controlling Federal Circuit case law (*Eon-Net*) and was objectively baseless.  Indeed, Plaintiff's proposed claim constructions and corresponding infringement theories were so lacking in evidentiary support that their assertions were unreasonable and baseless.  Making matters worse, this shake-down is only one episode in a

series of bad faith and objectively baseless lawsuits brought by subsidiaries and entities under the control of Acacia.  Acacia has abandoned multiple frivolous cases, here and in Adjustacam, after forcing Newegg to spend significant costs in defense.  This conduct is reprehensible and further supports that this case is indeed exceptional.

By this motion, pursuant to 35 U.S.C. § 285, Newegg seeks to recover all reasonable attorneys' fees incurred in this litigation.  Specifically, Newegg respectfully requests that the Court enter an order requiring Site Update to reimburse Newegg for attorneys' fees in the amount of $131,367.15.  Chaikovsky Decl. ¶ 4.   The attorneys' fees for which Newegg seeks reimbursement were necessarily and reasonably incurred in the defense of this action.  Chaikovsky Decl. ¶¶ 6, 23.   This case was handled with the appropriate level of diligence and concern for costs and efficiencies.  Chaikovsky Decl. ¶ 24.   Furthermore, the billing rates for Newegg's attorneys are reasonable for patent litigation counsel in California and nationally.  Chaikovsky Decl. ¶ 25.   The total fees and costs incurred on behalf of Newegg are in line with, and significantly below, the total fees and costs billed on average in patent infringement cases in California and nationally for cases of this size.  *Id.*

## VII.   CONCLUSION

Based on the foregoing, Newegg respectfully requests the Court to declare this case exceptional and to award it $131,367.15 which amount equals a reasonable portion of Newegg's attorney fees and expert witness fees incurred in the defense of this litigation.

Dated: November 26, 2012                McDERMOTT WILL & EMERY LLP


By:   */s/* Yar R. Chaikovsky
      Yar R. Chaikovsky
      Philip Ou

      Attorneys for Defendant
      Newegg Inc.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's ECF System.

Dated:  November 26, 2012                    /s/ Philip Ou

                                                            Philip Ou

**CERTIFICATE OF CONFERENCE**

This is to certify that counsel have complied with the meet and confer requirement set forth in Local Rule 54-5(b)(1).  Counsel for Newegg, Philip Ou, conferred with counsel for Site Update, Alisa Lipski, regarding Newegg's intent to file a Motion for Fees pursuant to 35 U.S.C. § 285 after the claims at issue were resolved several times during the Parties discussions in an attempt to reach a global resolution between Newegg and Acacia.  Ms. Lipski stated that Site Update would oppose any Motion for Fees brought by Newegg.  On November 25, 2012, Mr. Ou e-mailed with Site Update counsel, Ed Goldstein, to inquire as to whether Site Update's position with respect to Newegg's Motion for Fees changed.  Mr. Goldstein responded and confirmed that Site Update opposed Newegg's Motion for Fees.

DM_US 39972105-1.087252.0011

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park