# Exhibit A

KILPATRICK TOWNSEND & STOCKTON LLP
STEVEN D. MOORE, (SBN 290875)
smoore@kilpatricktownsend.com
DARIUS C. SAMEROTTE, (SBN 296252)
dsamerotte@kilpatricktownsend.com
Two Embarcadero Center, 8th Floor
San Francisco, CA  94111
Telephone:  (415) 576-0200
Facsimile:   (415) 576-0300

Attorneys for *Amici*
Kaspersky Lab ZAO, Limelight Networks, Inc.,
QVC, Inc., SAS Institute Inc., and Xilinx, Inc.,
INC.

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SITE UPDATE SOLUTIONS, LLC,<br><br>       Plaintiff,<br><br>  v.<br><br>ACCOR NORTH AMERICA, INC., ET AL.,<br><br>       Defendants. | Civil Action No. 5:11-CV-03306-PSG<br><br>**BRIEF OF *AMICI CURIAE* KASPERSKY LAB ZAO, LIMELIGHT NETWORKS, INC., QVC, INC., SAS INSTITUTE INC., AND XILINX, INC. IN SUPPORT OF DEFENDANT NEWEGG INC.'S SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES**<br><br>**Date:**   September 23, 2014, 10:00 a.m.<br>**Judge:** Hon. Paul Singh Grewal<br>**Ctrm:**  5, 4th Floor |



BRIEF OF AMICI CURIAE
CASE NO. 5:11-CV-03306-PSG

# TABLE OF CONTENTS

Page

I.     NATURE AND STAGE OF THE PROCEEDINGS ................................................... 1

II.    SUMMARY OF ARGUMENT ............................................................................... 1

III.   FACTS .................................................................................................................... 1

IV.   ARGUMENT .......................................................................................................... 2

       A.    Some patent assertion entities are filing an ever-increasing number of meritless suits, burdening the judicial system and defendant corporations. ........................................................... 2

       B.    Courts can use fee shifting to deter the filing of meritless suits and restore balance to the patent litigation process. ............................ 4

       C.    Patent plaintiffs should not escape fee shifting simply through dismissal or changing litigation positions. ......................................... 5

       D.    Where the case law is settled, patent plaintiffs should not be excused from a fee shifting award. ............................................................ 6

V.     CONCLUSION ....................................................................................................... 7



# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,
  393 F.3d 1378 (Fed. Cir. 2005) ............................................................................................. 4, 5

*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011) ................................................................................................ 5

*Kilopass Tech. Inc. v. Sidense Corp.*,
  No. C 10-02066 SI, 2014 WL 3956703 (N.D. Cal. Aug. 12, 2014) ......................................... 7

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014) .................................................................................................. 1, 4, 5, 7

*Yufa v. TSI Inc.*,
  09-CV-01315-KAW, 2014 WL 4071902 (N.D. Cal. Aug. 14, 2014) .................................... 6, 7

**Statutes**

35 U.S.C. § 285 .............................................................................................................................. 1, 5, 6

**Other Authorities**

Barack Obama, United States President, Fireside Hangout on Google+ (Feb. 14,
  2013), http://www.youtube.com/watch?v=kp_zigxMS-Y ........................................................ 3

David Segal, *Has Patent, Will Sue: An Alert to Corporate America*, N.Y. TIMES
  (July 13, 2013) .......................................................................................................................... 2

Eric Savitz, *Are Patent Trolls Now Zeroed In On Start-Ups?*, FORBES (Jan. 17, 2013,
  6:24 PM), http://www.forbes.com/sites/ciocentral/2013/01/17/are-patent-trolls-
  now-zeroed-in-on-start-ups/ ...................................................................................................... 2

*FACT SHEET: White House Task Force on High-Tech Patent Issues*, THE WHITE
  HOUSE (June 4, 2013), http://www.whitehouse.gov/the-press-
  office/2013/06/04/fact-sheet-white-house-task-force-high-tech-patent-issues ......................... 3

FED R. CIV. P. 11 ................................................................................................................................. 5

Joe Mullin, *New study suggests patent trolls really are killing startups*, ARS
  TECHNICA (June 11, 2014, 8:55 PM), http://arstechnica.com/tech-
  policy/2014/06/new-study-suggests-patent-trolls-really-are-killing-startups/ .......................... 2

*2013 NPE Litigation Report*, RPX CORPORATION, 2014, at 4, 31-32 ............................................... 2



**TABLE OF AUTHORITIES**
(continued)

Page

Owen Byrd & Brian Howard, *2013 Patent Litigation Year in Review*, LEX MACHINA, 2014, at 1 ............................................................................................................... 2

Randall R. Rader, Colleen Chien & David Hricik, *Make Patent Trolls Pay in Court*, N.Y. TIMES (June 4, 2013), http://www.nytimes.com/2013/06/05/opinion/make-patent-trolls-pay-in-court.html ............................................................................................. 3

Timothy B. Lee, *Here's what it feels like to be sued by a patent troll*, THE WASHINGTON POST (July 18, 2013) ...................................................................................... 2



**I.     NATURE AND STAGE OF THE PROCEEDINGS**

*Amici Curiae* Kaspersky Lab ZAO, Limelight Networks, Inc., QVC, Inc., SAS Institute Inc., and Xilinx, Inc. (collectively "*Amici*") file this brief in Support of Defendant Newegg Inc.'s Supplemental Motion for Declaration of Exceptional Case and Award of Fees in this matter (D.I. 673).

**II.    SUMMARY OF ARGUMENT**

Some non-practicing entities (NPEs) exploit inherent litigation advantages against their targets. These NPEs file shotgun suits to leverage the asymmetrically high cost of defense and in order to quickly settle for nuisance values. They have few expenses, especially when they plan to immediately settle, and have rarely been made to cover fees under 35 U.S.C. § 285 before *Octane Fitness*. As such, there has been little incentive for them to ensure their lawsuits have merit; rather, even a frivolous suit pays off if filed against enough targets and settled quickly and cheaply enough. These practices are a growing burden on the judicial system and the defendants that bear most of the litigation expenses. This imbalanced litigation landscape has created perverse economic incentives and economic waste at the cost of innovation.

The Supreme Court's decision in *Octane Fitness* permits courts to shift fees under § 285 to deter the filing of meritless patent suits. Fee shifting is equally appropriate where a patent plaintiff fails to conduct an adequate pre-suit investigation, as evidenced by a shifting strategy and/or sudden dismissal. Similarly, a plaintiff's unreasonable failure to apply established precedent should not insulate it from fee shifting where appropriate.

In this case, *Amici* respectfully submit that these same policy concerns support an award of fees in favor of Newegg and against Plaintiff for all of the reasons below.

**III.   FACTS**

The relevant facts have been set out in Newegg Inc.'s ("Newegg") opening brief (D.I. 673). For brevity, *amici* emphasize only the most critical facts.

- Site Update Solutions ("SUS") is a subsidiary of Acacia Research Corporation, one of the most active patent plaintiffs in the country that does not practice any of its patents.

BRIEF OF AMICI CURIAE
CASE NO. 5:11-CV-03306-PSG

- 1 -

- In May 2010, SUS sued thirty-seven companies in the Eastern District of Texas. SUS quickly settled many of these suits for small sums, relative to the cost of litigation.
- SUS proposed unreasonably flawed claim constructions that failed to follow existing means-plus-function doctrines.
- This case was transferred to the Northern District of California where SUS proposed new, yet still unreasonable, claim constructions that continued to lacked legal support.
- After receiving an unfavorable claim construction ruling, SUS dismissed its suit against Newegg with prejudice.

## IV.  ARGUMENT

### A. Some patent assertion entities are filing an ever-increasing number of meritless suits, burdening the judicial system and defendant corporations.

Patent holders filed 6092 patent cases in 2013, a 12.4% increase from the previous year.[1] Patent assertion entities filed many of these, accounting for the top ten plaintiffs by suits filed.[2] Acacia, specifically, led in the number of cases filed and total defendants across all non-practicing entities (NPEs) for 2013 and over the past five years combined.[3]

This influx of suits and their corresponding burden on the judicial system and the economy have drawn the attention of the public and government.[4] Former Chief Judge Rader, for example,

---

[1] Owen Byrd & Brian Howard, *2013 Patent Litigation Year in Review*, LEX MACHINA, 2014, at 1 (attached as Exhibit 1).
[2] *Id.* at *i*, 8.
[3] *2013 NPE Litigation Report*, RPX CORPORATION, 2014, at 4, 31-32 (attached as Exhibit 2).
[4] *See, e.g.*, Timothy B. Lee, *Here's what it feels like to be sued by a patent troll*, THE WASHINGTON POST (July 18, 2013), http://www.washingtonpost.com/blogs/wonkblog/wp/2013/07/18/heres-what-it-feels-like-to-be-sued-by-a-patent-troll/; Joe Mullin, *New study suggests patent trolls really are killing startups*, ARS TECHNICA (June 11, 2014, 8:55 PM), http://arstechnica.com/tech-policy/2014/06/new-study-suggests-patent-trolls-really-are-killing-startups/; Eric Savitz, *Are Patent Trolls Now Zeroed In On Start-Ups?*, FORBES (Jan. 17, 2013, 6:24 PM), http://www.forbes.com/sites/ciocentral/2013/01/17/are-patent-trolls-now-zeroed-in-on-start-ups/; David Segal, *Has Patent, Will Sue: An Alert to Corporate America*, N.Y. TIMES (July 13, 2013), http://www.nytimes.com/2013/07/14/business/has-patent-will-sue-an-alert-to-corporate-

discussed the detriments of such entities:

> The onslaught of litigation brought by "patent trolls" – who typically buy up a slew of patents, then sue anyone and everyone who might be using or selling the claimed inventions – has slowed the development of new products, increased costs for businesses and consumers, and clogged our judicial system.[5]

President Obama has also spoken out against this wave of litigation: "They don't actually produce anything themselves. They're just trying to essentially leverage and hijack somebody else's idea and see if they can extort some money out of them."[6]

NPEs have strategic advantages in patent litigation that can be leveraged, as Acacia and SUS attempted here, to exploit defendants and force nuisance value settlements. Without products of their own, NPEs do not face the possibility of a counter-suit or significant discovery costs.[7] Further, litigation costs often overlap, especially initially, and are often handled on a contingent-fee basis, allowing suits against numerous defendants.[8] Finally, where defendants face not only substantial litigation costs but potential damages as well, NPEs assume little risk.[9] Some NPEs exploit these inherent advantages to assert dubious patents against numerous defendants, leveraging high defense costs to extract nuisance value settlements:

> With huge advantages in cost and risk, trolls can afford to file patent-infringement lawsuits that have just a slim chance of success. When they lose a case, after all, they are typically out little more than their own court-filing fees. Defendants, on the other hand, have much more to lose from a protracted legal fight and so they often end up settling.[10]

These imbalances have fundamentally altered the patent litigation landscape, disproportionately placing the burdens of litigation on defendants. However, numerous

---

america.html.

[5] Randall R. Rader, Colleen Chien & David Hricik, *Make Patent Trolls Pay in Court*, N.Y. TIMES (June 4, 2013), http://www.nytimes.com/2013/06/05/opinion/make-patent-trolls-pay-in-court.html (attached as Exhibit 3).

[6] Barack Obama, United States President, Fireside Hangout on Google+ (Feb. 14, 2013), http://www.youtube.com/watch?v=kp_zigxMS-Y.  The White House formalized these remarks and recommended more discretion in fee shifting. *See FACT SHEET: White House Task Force on High-Tech Patent Issues*, THE WHITE HOUSE (June 4, 2013), http://www.whitehouse.gov/the-press-office/2013/06/04/fact-sheet-white-house-task-force-high-tech-patent-issues.

[7] *See* Rader, *supra* note 5.

[8] *See id*.

[9] *See id*.

[10] *See id*.

commentators and, most recently, the Supreme Court have suggested that courts can use fee shifting to deter such conduct.

### B. Courts can use fee shifting to deter the filing of meritless suits and restore balance to the patent litigation process.

Previous Federal Circuit precedent under *Brooks Furniture* inadvertently encouraged the filing of meritless suits.[11] This "overly rigid" test required subjective bad faith or objectively baseless litigation.[12] However, such egregious behavior was largely independently sanctionable already, which swallowed the rule.[13] This also allowed some NPEs to engage in conduct that fell well outside the norm without fear of repercussions, as long as their behavior was not so egregious as to be independently sanctionable. When coupled with their inherent strategic advantages, such entities effectively shifted the vast majority of the economic burden of litigation onto defendants. The *Brooks Furniture* test thus created perverse economic incentives that encouraged the proliferation of meritless suits and questionable litigation practices.

Fee shifting can counter the existing incentive to file meritless suits. Some NPEs will continue to file meritless suits and seek nuisance settlements so long as it is profitable to do so. Having effectively shifted the cost of litigation onto defendants, NPEs have every incentive to file suit, even when there is little chance of winning. At the outset, this is fundamentally unjust to defendants. It also creates economic waste. In many patent cases filed by NPEs, the asserted patents have little to no value or are inappropriately asserted. In either case, the money extracted does not reward innovation, but diverts resources from innovation and into unnecessary litigation. Therefore, to encourage innovation, society should minimize this waste; however, the parties who are best positioned to minimize this waste are not encouraged to do so. Fee shifting corrects this imbalance, providing an opposing economic force, encouraging adequate pre-suit investigation, and standing in for the checks that exist in traditional patent litigation (e.g., a possible counter-suit

---

[11] *See Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005).
[12] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1754, 1756 (2014) (citing *Brooks Furniture*, 393 F.3d at 1381).
[13] *See id*. at 1756 ("[T]he first category of cases . . . appears to extend largely to independently sanctionable conduct.).

and equally expensive litigation costs). Used this way, fee shifting targets meritless suits, not entities or business models.

The Supreme Court confronted the reality of litigation in deciding *Octane Fitness* and contemplated the use of fee shifting to deter such behavior. Even before *Octane Fitness*, commentators suggested that § 285 could be used to deter inappropriate behavior. Former Chief Justice Rader, for example, stated that judges already had the power to correct such abuses.[14] It was against this backdrop that the Court decided *Octane Fitness*. First, in abrogating *Brooks Furniture*, the Court greatly relaxed the standard under § 285:

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or *the unreasonable manner in which the case was litigated*. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.[15]

The Court also made it clear that sanctionable conduct is not necessary to award fees.[16] And the prevalence of abusive NPE lawsuits should not give cover to abusive behavior, otherwise the Supreme Court's test would simply create a race downhill. Several factors may help to inform the decision, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances *to advance considerations of compensation and deterrence*."[17] As discussed above, the need for deterrence in cases such as this one is great.

### C. Patent plaintiffs should not escape fee shifting simply through dismissal or changing litigation positions.

The imbalances discussed above encourage patent suits to be filed without adequate pre-suit investigation. Because the goal of some NPEs is to leverage the cost of defense into a nuisance settlement, the merits of the suit are often of little importance.[18] Consequently, should a suit fail to end almost immediately in settlement, the plaintiff may find it difficult to continue to

---

[14] Rader, *supra* note 5 ("[J]udges already have the authority to curtail these practices: they can make trolls pay for abusive litigation." (referring to 35 U.S.C. § 285 and FED R. CIV. P. 11)).[14]
[15] *Id*. at 1756 (emphasis added).
[16] *Id*. at 1756-57.
[17] *Id*. at 1756 n.6 (citation and internal quotation marks omitted) (emphasis added).
[18] *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011).

advance its infringement theories, especially in a consistent way against a wide range of targets. This often results in ever-shifting strategies and, if all else fails, dismissal. Adequate pre-suit investigation is thus essential in deterring meritless suits, and to do so, a patent plaintiff should not be allowed to walk away from its initial infringement theories when their obvious weaknesses suggest a lack of adequate pre-suit investigation.

Further, litigation expenses begin to accrue once a suit is filed. It is thus important to ensure that at every phase of the litigation there is merit to the plaintiff's allegations sufficient to warrant the expenditure of hundreds of thousands or even millions of dollars, not to mention the considerable efforts of the court, especially in ruling on claim construction. Courts often issue claim construction orders well into a case, after a defendant has had to spend countless hours and dollars defending itself. Because getting a case through claim construction offers NPEs significant opportunities to leverage nuisance-value settlements, an adverse claim construction ruling should not provide a get-out-of-jail-free card immunizing past behavior.

Of course, positions may legitimately change throughout the course of litigation, especially in light of new evidence during discovery. But a changed position is still subject to scrutiny, and courts should be more skeptical where matters of law are concerned, especially in the absence of discovery. Such behavior may again suggest an inadequate pre-suit investigation, which often leads to a meritless suit. In such instances, a defendant must waste large sums in defending against the suit, and allowing a patent plaintiff to simply walk away from such a reckless litigation strategy would only encourage more of the same.

**D. Where the case law is settled, patent plaintiffs should not be excused from a fee shifting award.**

Courts should not excuse patent plaintiffs from fee shifting under § 285 when they fail to follow governing law. While there will be times when case law is unsettled and a good faith argument to extend the law can be made, where, as here, that is not the case, fee shifting is appropriate.[19] To allow otherwise would only encourage additional litigation.[20]

---

[19] *See Yufa v. TSI Inc.*, 09-CV-01315-KAW, 2014 WL 4071902 (N.D. Cal. Aug. 14, 2014)

## V. CONCLUSION

Throughout this litigation, SUS appears to have engaged in irresponsible litigation behavior that warrants an award of fees. Its repeated failings during claim construction, failure to apply existing law, and strategy of quickly settling with numerous defendants for nuisance values reveal an exploitative litigation strategy[21] that "stands out from others."[22]

For the foregoing reasons, *amici* respectfully submit that Defendant Newegg Inc.'s Supplemental Motion for Declaration of Exceptional Case and Award of Fees should be granted.

DATED: September 3, 2014

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Darius C. Samerotte*
DARIUS C. SAMEROTTE

Attorneys for *Amici*
Kaspersky Lab ZAO, Limelight Networks, Inc.,
QVC, Inc., SAS Institute Inc., and Xilinx, Inc.

---

(awarding fees even where plaintiff claimed confusion as to the law).
[20] *See id*.
[21] *See* Rader, *supra* note 5 ("One sign of potential abuse is . . . when a patent holder sues a slew of companies with a demand for a quick settlement at a fraction of the cost of defense . . . .").
[22] *Octane Fitness,* 134 S. Ct. at 1756; *see also Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2014 WL 3956703 (N.D. Cal. Aug. 12, 2014); *Yufa v. TSI Inc.*, No. 09-CV-01315-KAW, 2014 WL 4071902 (N.D. Cal. Aug. 14, 2014).

CASE NO. 5:11-CV-03306-PSG
- 7 -