UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| SITE UPDATE SOLUTIONS, LLC, | ) | Case No. 5:11-cv-3306-PSG |
| | ) | |
| Plaintiffs, | ) | **ORDER DENYING SUPPLEMENTAL** |
| | ) | **MOTION FOR DECLARATION OF** |
| v. | ) | **EXCEPTIONAL CASE AND AWARD** |
| | ) | **OF FEES** |
| ACCOR NORTH AMERICA, INC., | ) | |
| | ) | **(Re: Docket No. 673)** |
| Defendants. | ) | |
| | ) | |

Until recently, in most patent cases, winning hasn't felt much like winning, particularly for defendants. Even if the court dismissed the case or granted summary judgment, or a jury returned a favorable verdict, a winning defendant had no real chance of recovering the substantial attorney's fees required just to mount a defense. Congress made it possible to recover such fees under 35 U.S.C. § 285, but the odds were slim. Under the Federal Circuit's precedent, a winning party could secure fees only if could show "both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless."[1] Few winners dared even try to meet this exacting standard; fewer still succeeded.

---

[1] *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1754 (2014) (citing *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005)).

United States District Court
For the Northern District of California

All that seemed to change last year.  Rejecting the Federal Circuit's "rigid and mechanical" approach, the Supreme Court established a more flexible standard in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.* that construes "exceptional" according to its "ordinary meaning."[2]  Now an exceptional case "is simply one that stands out from others."[3]  This case shows, however, that a new standard does not always mean a new result.

Before *Octane*, and under the old standard, this court declined to find this case exceptional so as to justify an award of fees to Defendant Newegg, Inc.[4]  After *Octane*, the Federal Circuit vacated the court's decision and remanded for another look under the new standard.[5]  Whatever the error of Plaintiff Site Update Solutions, LLC's ways, the court remains convinced that this is not an exceptional case; Newegg's motion for fees again is DENIED.

## I.

Although under the traditional "American rule" parties to litigation are responsible for their own legal costs and fees, Congress determined that in certain "exceptional cases" the court may award to the prevailing party "reasonable attorney fees."[6]  The statute does not define what an "exceptional case" is.  The Supreme Court recently relaxed the "overly rigid" formulation for determining exceptionality that the Federal Circuit set forth in *Brooks Furniture*.[7]  An "exceptional" case is now "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the

---

[2] *Id.* at 1754, 1756 (internal citations omitted).

[3] *Id.*

[4] *See* Docket No. 665.

[5] *See Site Update Solutions, LLC v. Accor North America, Inc.*, 556 Fed. Appx. 962, 962 (Fed. Cir. 2014).

[6] *See* 35 U.S.C. § 285.

[7] *See Octane*, 134 S.Ct. at 1756.

2

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES

case) or the unreasonable manner in which the case was litigated.  District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."[8]

This "simple discretionary inquiry" imposes "no specific evidentiary burden, much less a high one."[9] And there is "no precise rule or formula for making these determinations."[10]  Rather, the Supreme Court left this inquiry to the court's exercise of "equitable discretion…in light of the considerations" that the Supreme Court identified.[11]  These factors include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."[12]

This case originated in the Eastern District of Texas when SUS filed suit against Newegg and other defendants.[13]  In its complaint, SUS alleged that the various defendants infringed on United States Reissue Patent No. RE 40,683, a reissue of United States Patent No. 6,253,198, titled "Process for Maintaining Ongoing Registration for Pages on a Given Search Engine."[14]  The parties filed claim construction briefs and a motion for summary judgment in the Eastern District of Texas.[15]  Throughout the litigation, SUS regularly dismissed defendants.[16] Many of these dismissals were subject to settlement agreements between SUS and the individual defendants.[17]

---

[8] *Id.*

[9] *Id.* at 1758.

[10] *Id.* at 1756 (internal citations omitted).

[11] *Id.* (internal citations omitted).

[12] *Id.* at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

[13] *See* Docket No. 209.  The court recognizes that the pre-*Octane* standard under which it previously evaluated the case no longer applies.  However, the new standard that a case must meet in order to be exceptional does not alter the facts of this case, the positions the parties took regarding claim construction or the claim constructions the court ultimately adopted.  Thus, the court reiterates portions of its vacated order relating to these matters to the extent they remain relevant to the exceptionality inquiry.

[14] *See id.*

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES

Before the Eastern District of Texas could hold a *Markman* hearing, this case was transferred to this court. Once the case moved to this court, the parties again filed their claim construction briefs.[18] The court held a tutorial[19] and a claim construction hearing.[20] At the hearing, the court issued its constructions from the bench.[21] As part of its construction, the court declined to construe four of the terms, citing concerns that the terms were indefinite.[22] The court then invited the defendants to move for summary judgment on indefiniteness grounds.[23]

After the claim construction hearing, SUS and all of the remaining defendants except for Newegg stipulated to a dismissal of all of SUS's claims.[24] Newegg, however, refused to dismiss its declaratory relief counterclaims and indicated that it would file a summary judgment motion in line with the court's suggestion.[25] SUS responded by filing a motion to dismiss its claims with an accompanying covenant not to sue to end the dispute between the parties.[26] Newegg opposed SUS's motion because it believed the covenant not to sue was inadequate to protect against a future

---

[15] *See* Docket Nos. 494, 499, 500, 501.

[16] *See* Docket Nos. 372, 380, 415, 429, 432, 433, 451, 489, 490, 537, 538, 572, 600, 611.

[17] *See* Docket Nos. 649-6 to 649-14.

[18] *See* Docket Nos. 603, 605, 607.

[19] *See* Docket No. 618.

[20] *See* Docket No. 619.

[21] *See* Docket No. 632 at 153:3-10. The court assured the parties that an order with its reasoning would precede any entry of judgment. *See id.*

[22] *See id.* at 157:5-15.

[23] *See id.* at 157:16-19.

[24] *See* Docket No. 624.

[25] *See* Docket No. 623.

[26] *See* Docket No. 642.

4

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES

United States District Court
For the Northern District of California

1   SUS suit.[27]  But after SUS's amendment of the covenant not to sue, Newegg and SUS agreed to

2   dismiss the claims between them.[28]

3        Newegg then filed a motion requesting the court to determine this case exceptional and to

4   award Newegg its attorney's fees.[29]  The court denied Newegg's motion, holding under the pre-

5   *Octane* standard that the case was not exceptional.[30]  Newegg appealed the denial to the Federal

6   Circuit.[31]  After briefing and oral argument before the Federal Circuit, *Octane* issued.  The Federal

7   Circuit then vacated this court's order denying Newegg's motion and remanded the case "for

8   further proceedings in light of the Supreme Court's decision" in *Octane*.[32]

9        To ascertain the legitimacy of SUS's position, the court engages in a type of "meta-claim

10  construction."[33]  Because the court did not have the opportunity to issue a complete claim

11  construction opinion before all claims were dismissed, it must explain here why it construed the

12  terms in the manner in which it did before it can explain the merit, or lack thereof, of SUS's

13  arguments.  Rather than present an entire claim construction analysis against which to measure the

14  validity of SUS's arguments, the court limits itself to explaining its construction of the terms for

15

16

---

17  [27] *See* Docket No. 645.

18  [28] *See* Docket No. 646.

19  [29] *See* Docket No. 649.

20  [30] *See* Docket No. 665.

21  [31] *See* Docket No. 666.

22  [32] *See Site Update Solutions, LLC*, 556 Fed. Appx. at 962.

23  [33] Under the pre-*Octane* standard, the Federal Circuit required courts to support an exceptional case
    finding on grounds that positions during claim construction were baseless with an explanation of
24  the court's claim construction analysis. *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1319
    (Fed. Cir. 2011); *see also Eon-Net LP v. Flagstar Bancorp*, 249 Fed. Appx. 189, 196-98 (Fed. Cir.
25  2007) (remanding to district court for "full claim construction analysis" to determine whether
    position was unrealistic).  Because the court evaluates considerations of "objective
26  unreasonableness" and "frivolousness" as well as the "substantive strength of a party's litigating
    position" under *Octane*, a "meta-claim construction" remains relevant to the exceptionality inquiry.
27  *See Octane*, 134 S.Ct. at 1756 n.6.

5

28  Case No.: 5:11-cv-03306-PSG
    ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL
    CASE AND AWARD OF FEES

which Newegg challenges SUS's positions.  But first, the court provides the background of the claim construction and the claim at issue.

SUS pursued an infringement claim against the defendants for only Claim 8 of the RE'683 Patent.[34]  The parties agreed that Claim 8 was a means-plus-function claim under 35 U.S.C. § 112(6).[35]  Claim 8 describes:

An apparatus for updating an internet search engine database with current content from a web site, comprising:

a means for creating and modifying a database of a web site wherein said website database contains content capable of being indexed by an internet search engine;

a means for identifying, using said web site database, new, deleted, [unmodified] or modified content;

a means for transmitting to said internet search engine a set of indices, wherein said set of indices comprises said new, deleted, unmodified or modified database content;

a means for opening, by a user, a form on a computer to enable or disable internet search engines to be updated with information;

a means for enabling or disabling, by said user, the appropriate internet search engines on said form;

a means for submitting, by said user, said information to a script;

a means for parsing, through the user of said script, said information from said form; and

a means for updating, through the use of said script, said database of search engine.[36]

---

[34] *See* Docket Nos. 605, 607.

[35] *See* Docket Nos. 605, 607.

[36] *See* Docket No. 605-1 at 15-16.

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES

1     The parties sought construction of twelve terms from the claim.[37]  At issue here, however,

2   are only the terms that relate to Newegg's assertion that this case is exceptional:

| Term | SUS Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "website database" | Record of resources on the website | Structure of fields or records built by software that catalogues the resources of a website, other than the resources themselves |
| "a means for creating and modifying a database of a website where in said website database contains content capable of being indexed by an internet search engine" | Function: creating and modifying a database of a web site wherein said website database contains content capable of being indexed by an internet search engine<br><br>Structure: The combination of a web server, Common Gateway Interface script, website database and form and equivalents | Function: creating and modifying a database of a web site wherein said website database contains content capable of being indexed by an internet search engine<br><br>Structure: (i) a website server or surrogate website server; (ii) the Table of Files, which is a field in the Table of Search Engines (as described at 6:51–7:18; 7-29-50); and (iii) the disclosed server algorithm, which: (1) builds the Table of Files list containing records that store URLs that are obtained from either (a) a manually entered list; (b) a specified map page; or (c) a spider crawling from specified entry points of the web site; and (2) modifies records in the Table of Files list when content is added, altered, or removed (all as described at 7:55-8:13 and Fig. 1a, boxes 203a-c, 204a-c, and 206b-c). |
| "a means for identifying, using said web site database, new, deleted, or modified content" | Function: identifying, using said web site database, new deleted or modified content<br><br>Structure: the combination of a web server, Common Gateway Interface (CGI) program, website database, form and equivalents | Function: identifying, using said web site database, new deleted or modified content<br><br>Structure: (i) a website server or surrogate website server; and (ii) the server algorithm that automatically checks a database representing a historical version of a website against the current version of the website to |

---

[37] *See* Docket No. 605; *see also* Docket No. 607.

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL
CASE AND AWARD OF FEES

| | | detect changes, and: (1) marks a resource as new if it is present on a website server but not yet in the website database; (2) marks a resource as deleted if it is listed in the web site database but cannot be retrieved; (3) marks a resource as modified if the date and time of last modification in the web site database for the resource is earlier than the date and time of last modification provided by a web server for the resource; and (4) does not mark any unmodified resources (all as described at 4:56-67 and 9:30-10:25) |
|---|---|---|
| "a means for transmitting to said internet search engine a set of indices, wherein said set of indices comprises said new, deleted or modified database content" | Function: transmitting to said internet search engine a set of indices, wherein said set of indices comprises new, deleted or modified database content<br><br>Structure: the combination of web server and Common Gateway Interface (CGI) script and equivalents | Function: transmitting to said internet search engine a set of indices, wherein said set of indices comprises new, deleted or modified database content<br><br>Indefinite: The patent discloses no structure for "transmitting to said internet search engine a set of indices, wherein said set of indices comprises said new, deleted, or modified database content." Although the specification implies that the website server or surrogate transmits information relating to a resource to a search engine, the specification does not disclose the function of transmitting a "set of indices" to a search engine, and does not disclose any specific structure that transmits anything to a search engine.<br><br>Structure: The structure disclosed in the specification that comes closest to performing the claimed function is at most incomplete and does not perform the complete claimed function. Specifically, that disclosed structure is a website server or surrogate website server, which implicitly transmits resources (but not |

8

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL
CASE AND AWARD OF FEES

| | | a "set of indices") to the search engine index (as described at 10:42-44). |
|---|---|---|
| "a means for parsing, through the use of said script, said information from said form" | Function: parsing information from a form<br><br>Structure: agents (programs that can travel over the internet and access remote resources) and their equivalents | Function: parsing, through the user of said script, said information from said form.<br><br>Indefinite: The patent discloses no structure for performing the claimed function. Although the specification states that a "web site server or surrogate parses CGI script," the parsing of CGI script is not the same as the parsing of "said information from said form," and the specification fails to identify an algorithm for performing parsing.<br><br>Structure: The structure disclosed in the specification that comes closest to performing the claimed function is at most incomplete and does not perform the complete claimed function. Specifically, that disclosed structure is: (i) a website server or surrogate website server, which parses CGI script (as shown by Fig. 1b, box 103). |
| "a means for updating, through the use of said script, said database of search engine" | Function: (agreed to by ALL parties) updating, through the use of said script, said database of search engine.<br><br>Structure: Common Gateway Interface (CGI) program of search engines and equivalents | Function: (agreed to by ALL parties) updating, through the use of said script, said database of search engine.<br><br>Indefinite: The patent discloses no structure for "updating, though the use of said script, said database of search engine." Although the specification does disclose that a search engine executes a particular script to update its database (10:44-11:44; 12:18-13:44; Figs. 3a and 3b), that script is executed by the search engine, and must be different from the script that parses said information from said form, which executes on the website server or surrogate. The specification discloses no script that |

9

United States District Court
For the Northern District of California

| | | performs both functions, and thus cannot disclose any structure for executing such a script.<br><br>Structure: The structure disclosed in the specification that comes closest to performing the claimed function is at most incomplete and does not perform the complete claimed function. Specifically, that disclosed structure is: (i) a search engine; and (ii) the "register file" CGI script executed by the search engine (as described at 10:39-41 and 10:43-44), that (1) removes entries from the search engine database for files that no longer exist; (2) adds entries to the search engine database for newly registered files; and (3) updates entries in the search engine database for files that have changed (all as described at 10:46-11:44; at 12:18-13:44; and in Figs. 3a and 3b). |
|---|---|---|

The court construed those terms as follows[38]:

| Term | Court's Constructions |
|---|---|
| "website database" | Record of resources on the website, other than the resources of the website themselves |
| "a means for creating and modifying a database of a website where in said website database contains content capable of being indexed by an internet search engine" | Function: Creating and modifying a database of a website wherein said website database contains content capable of being indexed by an internet search engine<br><br>Structure: A website server or surrogate website server; the table of files which is a field in the table of search engines; and the disclosed server algorithm which builds the table of files list containing records that store URL's that are obtained from either a manually entered list, a specified map page, or a spider crawling from specified entry points of the website and modifies records in the table of files list when content is added, altered, or removed |
| "a means for identifying, | Function: Identifying, using said website database, new, |

---

[38] See Docket No. 632 at 153:17-157:15.

10

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES

| | |
|---|---|
| using said web site database, new, deleted, or modified content" | deleted, or modified content<br><br>Structure: A website server or surrogate website server and the server algorithm that automatically checks the database representing a historical version of a website against a current version of a website to detect changes, and marks a resource as new if it is present on a website server but not yet in the website database; marks a resource as deleted if it is listed in the website database, but cannot be retrieved; marks a resource as modified if the date and time of last modification in the website database for the resource is earlier than the date and time of last modification provided by a web server for the resource, and does not mark any modified, unmodified, resources |
| "a means for transmitting to said internet search engine a set of indices, wherein said set of indices comprises said new, deleted or modified database content" | Not construed because of concerns regarding indefiniteness |
| "a means for parsing, through the use of said script, said information from said form" | Not construed because of concerns regarding indefiniteness |
| "a means for updating, through the use of said script, said database of search engine" | Not construed because of concerns regarding indefiniteness |

In its discussion of both its constructions and the merit of SUS's arguments, the court keeps in mind the Federal Circuit's broader guidance regarding claim construction. "To construe a claim term, the trial court must determine the meaning of any disputed words from the perspective of one of ordinary skill in the pertinent art at the time of filing."[39] This requires a careful review of the intrinsic record, comprised of the claim terms, written description, and prosecution history of the patent.[40] While claim terms "are generally given their ordinary and customary meaning," the claims themselves and the context in which the terms appear "provide substantial guidance as to

---

[39] *Chamberlain Group, Inc. v. Lear Corp.*, 516 F.3d 1331, 1335 (Fed. Cir. 2008).

[40] *Id.*; *see Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (internal citations omitted).

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES

the meaning of particular claim terms."[41]  Indeed, a patent's specification "is always highly relevant to the claim construction analysis."[42]  Claims "must be read in view of the specification, of which they are part."[43]

Although the patent's prosecution history "lacks the clarity of the specification and thus is less useful for claim construction purposes," it "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be."[44]  The court also has the discretion to consider extrinsic evidence, including dictionaries, scientific treatises, and testimony from experts and inventors. Such evidence, however, is "less significant than the intrinsic record in determining the legally operative meaning of claim language."[45]

## II.

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338.  The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

## III.

The court agrees with Newegg that SUS's proposed claim constructions were erroneous. However, "the substantive strength of [SUS's] litigating position" was not so contrary to the "governing law and the facts of the case" that this case is one that stands out from others.[46]  Given

---

[41] *Id.* at 1312-14.

[42] *Phillips*, 415 F.3d at 1315 (internal citations omitted).

[43] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370 (1996). *See also Ultimax Cement Mfg. Corp v. CTS Cement Mfg. Corp.*, 587 F. 3d 1339, 1347 (Fed. Cir. 2009).

[44] *Phillips*, 415 F.3d at 1317 (internal quotations omitted).

[45] *Id.* (internal quotations omitted).

[46] *See Octane*, 134 S.Ct. at 1756.

12

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES

United States District Court
For the Northern District of California

that SUS's litigating position was not entirely frivolous or objectively unreasonable, the court also does not need to find this case exceptional in order to deter others from imitating SUS's conduct.[47] Viewed together under the totality of the circumstances, these findings establish that this case is not exceptional.

**First**, the claim construction positions SUS asserted before the Eastern District of Texas do not establish that this case was exceptional.[48] Before the case was transferred to this court, SUS prepared a claim construction brief in which it cited to the requirement of an algorithm for computer-implemented MPF claims but did not examine this requirement or cite an algorithm.[49] Instead, SUS simply claimed that a CGI script provided sufficient structure for at least six of its MPF claims.[50] As the court previously noted, this position was "highly problematic."[51] Accordingly, the court would likely have found that this case "stands out from others with respect to the substantive strength of [SUS's] litigating position" if SUS had maintained this legal position beyond its original claim construction brief.[52]

However, after the case was transferred to this court, SUS did not file a reply to the claim construction brief it filed in Texas. SUS instead attempted to correct the defects defendants identified by filing a new claim construction brief altogether before this court.[53] Newegg is correct that SUS's adoption of more reasonable claim construction positions does not make SUS's reliance

---

[47] *See id.* at 1756 n.6.

[48] SUS's claim that "Newegg did not appeal this Court's finding that SUS's claim construction positions were not frivolous" is not accurate. *See* Docket No. 676 at 4. On appeal, Newegg presented several arguments in support of its position that SUS's claim construction positions made this case exceptional. *See* Case No. 13-1458, Docket No. 14.

[49] *See* Docket No. 494 at 1-2.

[50] *See* Docket No. 494.

[51] *See* Docket No. 665 at 25.

[52] *See Octane*, 134 S.Ct. at 1756.

[53] *See* Docket No. 605 at 1 ("Plaintiff has carefully considered Defendants' positions and has modified certain of its constructions to include additional structure, in addition to the CGI script.").

13

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES

on its original unreasonable positions "disappear."[54]  But it is rather common for parties to revise

their claim construction positions or arguments that support those positions in response to criticism

from their opponents.  In fact, Newegg also filed with this court a responsive claim construction

brief that differed in some respects from the claim construction brief it initially filed in Texas.[55]

And as noted below, SUS's subsequent claim constructions, while not correct, were not so

objectively unreasonable or frivolous as to be rare or out of the ordinary.  Viewed under the totality

of the circumstances, then, SUS's adoption of initially unreasonable claim constructions does not

make "the substantive strength of [its] litigating position" so weak that this case stands out from

others because SUS abandoned its reliance on these constructions when it was given the

opportunity to do so.[56]

    *Second*, SUS's flawed interpretations of MPF law do not make this case exceptional.  In its

California claim construction brief, SUS asserted that a CGI script in combination with other items

provided structure for several disputed claims.[57]  One of the main issues in dispute at the *Markman*

hearing was whether this combination provided enough structure that an algorithm was not

necessary.  Newegg asserts that SUS's failure to "justify its unsupportable position" that its

proposed structures are "special purpose computers" for which an algorithm is not required makes

this case exceptional.[58]

---

[54] *See* Docket No. 673 at 9.

[55] *Compare* Docket No. 500 (Newegg's Texas responsive claim construction brief) *with* Docket No. 607 (Newegg's California responsive claim construction brief).  Newegg filed a joint claim construction brief with other defendants opposing SUS's constructions, but for convenience, the court refers only to Newegg as maintaining the arguments.

[56] *See Octane*, 134 S. Ct. at 1756.

[57] *See* Docket No. 605.  Newegg's assertion that SUS admitted in its brief to the Federal Circuit that its California claim construction positions are "not materially different" from its Texas positions takes SUS's statement out of context. *See* Docket No. 673 at 1.  This statement does not refer to SUS's California claim construction positions as a whole, but rather to SUS's continued belief that its "web server with 'software tools'" was a special purpose computer. *See* Case No. 13-1458, Doc. No. 19 at 33-34.

[58] *See* Docket No. 673 at 10.

14

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL
CASE AND AWARD OF FEES

1    This dispute relates to framework of rules covering MPF claims and computer-related

2    patents.  In general, patents must recite a structure that performs the function the patentee seeks to

3    protect.[59]  However, a claim "may be expressed as a means or step for performing a specified

4    function without the recital of structure" but "such claim shall be construed to cover the

5    corresponding structure…described in the specification and equivalents thereof."[60]  In other words,

6    in exchange for being excused from describing the structure within the claim, the patentee must

7    limit itself to the structures described in the specification.[61]  Failure to describe a structure that can

8    perform the function in either the specification or the claim renders the patent indefinite.[62]

9    Because a computer generally cannot perform a particular function without further

10   instructions, identifying a general purpose computer does not satisfy the "structure" requirement

11   for a computer function.[63]  The specification therefore must describe an algorithm that explains the

12   instructions for the computer to satisfy means-plus-function specificity.[64]  Put differently, for a

13   computer apparatus claimed in a means-plus-function manner, the claim and the specification must

14   disclose essentially three elements: (1) the function, (2) the part of the computer that can perform

15   the function, and (3) the algorithm that makes the computer perform that particular function.  The

16   last two elements combine to describe a "special purpose computer" programmed to perform the

---

[59] *See Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1363 (Fed. Cir. 2012).

[60] 35 U.S.C. § 112(f).

[61] *See Ergo Licensing*, 673 F.3d at 1363.

[62] *See id.*

[63] *See id.* at 1364; *see also Aristocrat Tech. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008) ("Because general purpose computers can be programmed to perform very different tasks in very different ways, simply disclosing a computer as the structure designated to perform a particular function does not limit the scope of the claim to the corresponding structure, material, or acts that perform the function, as required by section 112 paragraph 6.") (internal quotations omitted).

[64] *See Ergo Licensing*, 673 F.3d at 1363-64; *Aristocrat*, 521 F.3d at 1333.

15

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL
CASE AND AWARD OF FEES

United States District Court
For the Northern District of California

function described in the claim.[65]  The "special purpose computer" thus described satisfies the

structure component of a means-plus-function claim.[66]

      The Federal Circuit has carved out a limited exception to the requirement that an algorithm

must be disclosed.[67]  In situations where the claimed functions can be performed by a general-

purpose computer "without special programming," patentees need not "disclose more structure

than the general purpose processor that performs those functions."[68]  But "[i]f special programming

is required for a general-purpose computer to perform the corresponding claimed function, then the

default rule requiring disclosure of an algorithm applies."[69]  "It is only in the rare circumstances

where any general-purpose computer without any special programming can perform the function

that an algorithm need not be disclosed."[70]

      SUS did not argue that the structure it provided was a "general purpose computer" for

which an algorithm need not be disclosed.  Instead, SUS took the position that its proposed

structure was a "special purpose computer" that did not require an additional algorithm.[71]

Although a "special purpose computer" is usually "what a general purpose computer becomes

---

[65] *See Aristocrat*, 521 F.3d at 1333.

[66] *See id.*

[67] *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011); *see also Ergo*, 673 F.3d at 1364-65 (noting that *Katz* "identified a narrow exception to the requirement that an algorithm must be disclosed for a general-purpose computer to satisfy the disclosure requirement").

[68] *Katz*, 639 F.3d at 1316.

[69] *Ergo*, 673 F.3d at 1365.

[70] *Id.*

[71] *See* Docket No. 608 at 2-4.

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL
CASE AND AWARD OF FEES

when an appropriate algorithm is used,"[72] there are circumstances in which a structure can become a special purpose computer without any algorithm.[73]

SUS argued that *Goss* and other cases showed that its proposed combination was a special purpose computer because it performed in a manner beyond general processing without additional programming.[74] To support this position, SUS compared the functions courts have identified "special purpose computers" capable of performing and functions associated with "general purpose computers" and argued that the functions that the CGI program and the web server performed make them "special purpose computers."[75] In particular, SUS argued that because the web server "receives requests in HTTP, HTTPS, or a similar standardized web protocol," "generates responses to those requests," "[uses] CGI scripts . . . to pass data between different processes running on the web server," and "passes data between a web server and web client," the web server was a "special purpose computer" when combined with the other structures in its construction.[76]

SUS misinterpreted the Federal Circuit's guidance to the extent that it asserted that its proposed structures were special purpose computers simply because they performed functions similar to those performed by computers that courts have identified as "special purpose computers." This assertion overlooked the principle that a "special purpose computer" meets the

---

[72] *See Goss Intern. Am., Inc. v. Graphic Mgmt. Assoc., Inc.*, 739 F. Supp. 2d 1089, 1100 (N.D. Ill. 2010).

[73] The court rejected defendants' claim in *Goss* that the structure for the construction of the term "control means" must include an algorithm in part because "a controller is a known structure that is a type of special purpose computer" and the controllers at issue in the case "may not even require any algorithms at all if they consist of only circuitry to perform their specific purpose." *See id.* (internal citations omitted).

[74] *See* Docket No. 608 at 2-4.

[75] *See* Docket No. 608 at 4 ("Comparing and contrasting these examples and purposes of general purpose computers and special purpose computers with the means-plus-function corresponding structures in the present case shows that the corresponding structures are special purpose computers, not general purpose computers.").

[76] *See id.*

17

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES

structure requirement because a "special purpose computer" is programmed to perform the function described in the claim.[77]  A computer that performs some functions associated with a special purpose computer but does not perform the claimed function set forth in the patent without additional programming is not a special computer.  SUS's proposed structures did not disclose how to perform the claimed functions because the functions that SUS identified did not include creating or modifying a website database or identifying changes in the website by using the website database. The structures required an algorithm to reach the level of specificity required under Section 112(f). SUS's position that they were a "special purpose computer" for which no algorithm was required was incorrect.

However, SUS's assertion of this incorrect position does not, as Newegg claims, amount to a "brazen and conscious disregard for the law far beyond a simple 'misunderstanding.'"[78]  Contrary to Newegg's claims, SUS did not assert that that it could simply "call generic computer structures 'special purpose computers' and assert that it need not include the disclosed special programming required to perform the function."[79]  Rather, SUS made the more limited error of claiming that the performance of functions identified with special purpose computers was sufficient to turn its proposed combination into a special purpose computer for which no algorithm was required even though its combination did not perform the claimed functions.[80]

While SUS's reliance on the case law to establish this position was misguided, SUS's interpretation of these cases was not so erroneous as to amount to "nothing more than a façade."[81] The court agrees with Newegg that SUS's use of *TecSec* to support its claim that its structures were

---

[77] *See Aristocrat*, 521 F.3d at 1333.

[78] *See* Docket No. 679 at 5 n.4.

[79] *See* Docket No. 673 at 10.

[80] *See* Docket No. 608 at 2-4.

[81] *See* Docket No. 673 at 10.

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES

United States District Court
For the Northern District of California

1    not required to include an algorithm fails.[82] SUS cannot rely on *TecSec*'s finding that a structure

2    provides sufficient disclosure when it includes "detailed prose that shows how the specific software

3    products operate to implement the claimed functions" because SUS did not provide such a

4    structure.[83]

5            Further, *Katz* does not support SUS's assertion that "for the algorithm requirement to apply,

6    Defendant must present at least substantial evidence that a general computer cannot perform the

7    relevant means-plus-function functions."[84]  *Katz* relates to the rare situation in which a general

8    purpose computer does not need to disclose an algorithm because none is needed to perform the

9    function.  Unlike in *Katz*, where the plaintiff did not claim "a specific function performed by a

10   special purpose computer," here SUS asserted that its proposed structures were special purpose

11   computers.[85]

12   ────────────────────

     [82] SUS cited to *Goss* for the proposition that "a special purpose computer can be as simple as a
13   controller" in its claim construction relief brief, opposition to Newegg's original motion for
     attorney's fees and appellee brief on appeal to the Federal Circuit. *See* Docket No. 608 at 3; Docket
14   No. 654 at 8 n.2; Case No. 13-1458, Docket No. 19 at 24.  Later, SUS cited to *TecSec* to support its
     proposition that its "described and disclosed software" provided "sufficient software disclosure" to
15   convert a web server into a special purpose computer for which no algorithm was needed. *See*
     Docket No. 676 at 12-13 (citing *TecSec, Inc. v. International Business Machines Corp.*, 731 F.3d
16   1336 (Fed. Cir. 2013)).  It is true SUS acknowledged at oral argument that "*TecSec* is a better case
     cite." *See* Docket No. 690 at 55:5-6.  Further, the court agrees with Newegg that SUS's claim that
17   "sufficient software disclosure" could convert a web server into a special purpose computer
     represents a "new" position in the sense that it offers new support for SUS's position that its
18   proposed structures were special purpose computers for which no algorithm was needed. *See*
     Docket No. 679 at 4.  However, it is hardly unique for a party to fail initially to select the best case
19   to support its position, revise its use of the case law in response to criticism from its opponent or
     refine its positions as the case develops.  Although SUS could have better supported its position
20   from the beginning, neither its failure to originally select the most persuasive case nor its
     replacement of its original case with one that better supported its claim make this case exceptional.

21   [83] *See* 731 F.3d at 1349.

22   [84] Docket No. 608 at 4 (citing *In Re Katz Interactive Call Processing Patent Litig.*, Case No. MDL
23   2:07-ML-1816-B-RGK, 2012 WL 3060868, at *3 (C.D. Cal. May 24, 2012)); *see also* Docket No.
     654 at 8; Case No. 13-1458, Docket No. 19 at 25.

24
     [85] In *Katz*, the Federal Circuit held that a plaintiff did not need to disclose more structure than a
25   general purpose computer that performed the claimed functions when the plaintiff did not claim
     "specific functions that would need to be implemented by programming a general purpose
26   computer to convert it into a special purpose computer capable of performing those specified
     functions." *See* 639 F.3d. at 1316 (Fed. Cir. 2011).  The Federal Circuit remanded to the district
27   court to decide whether a general purpose processor could perform the functions recited in the

                                                      19
28   Case No.: 5:11-cv-03306-PSG
     ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL
     CASE AND AWARD OF FEES

United States District Court
For the Northern District of California

1    SUS claimed that the case law provided it with "a reasonable basis to believe that the

2    disclosure of linked software which presumably performs many functions can provide sufficient

3    structure if one of ordinary skill in the art would understand how to use it to perform the claimed

4    function."[86]  Even if this reading of these cases was correct, it would not justify SUS's failure to

5    include an algorithm because SUS had not disclosed "detailed prose" showing how its structures

6    operated "to implement the claimed functions."[87]  But SUS's misunderstanding of the case law

7    relates to the extent of disclosure the cases require.  It is not rare or out of the ordinary for a party

8    to misunderstand nuances in the case law and the applicability of those cases to the facts at issue.

9    Accordingly, the limited nature of SUS's misinterpretation indicates that SUS did not deliberately

10   disregard the law.

11        Newegg correctly recognizes that under *Octane*, the court need not find that SUS

12   consciously disregarded the law in order to find this case exceptional.[88]  However, viewed

13   objectively under the totality of the circumstances, the limited nature of SUS's misunderstanding of

14   the law establishes not only that SUS did not consciously disregard the law, but that SUS's

15   misunderstanding of the law was also not so egregious as to make this case exceptional.  As stated

16   above, SUS did not entirely misunderstand the legal framework regarding MPF claims and

17   computer-related patents or fail to offer any support for its position that its proposed structures

18   _____

19   contested claims. *See id.* at 1317.  On remand, the district court did not find an asserted claim
     invalid as indefinite in part because "defendants have failed to present substantial evidence

20   showing that a general purpose computer" could not perform the recited function. *See* 2012 WL
     3060868 at *2.  The district court's finding is not applicable here because SUS did not claim its

21   proposed structures are general purpose computers.  In a similar vein, SUS's citations to *Elekta* and
     *Pavilion* do not justify SUS's failure to link its structures to the claimed functions because those

22   cases relate to the *Katz* situation which is not at issue here. *See* Docket No. 676 at 13 (citing *Med.
     Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1214 (Fed. Cir. 2003) and

23   *Pavilion Techs., Inc. v. Emerson Elec. Co.*, Case No. A-05-CA-898-SS, 2006 WL 6210180, at *8-
     *9 (W.D. Tex. Sept. 5, 2006)).

24   [86] *See* Docket No. 676 at 13.

25   [87] *See TecSec*, 731 F.3d at 1349.

26   [88] *See Octane*, 134 S. Ct. at 1756.

27                                                    20

28   Case No.: 5:11-cv-03306-PSG
     ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL
     CASE AND AWARD OF FEES

United States District Court
For the Northern District of California

could be special purpose computers for which no algorithm was needed.  Rather, it is not rare or unusual for a party or even a judge to adopt incorrect claim construction positions.[89]  As a result, SUS's interpretation of MPF law was flawed but not so objectively unreasonable or unusual as to make this case exceptional.

        *Third*, SUS's position that the Table of Files within the Table of Search Engines should not be included as a necessary structure for the "means for creating" claim also did not make this case exceptional.  The parties disputed the construction of the structure that performed the function "a means for creating and modifying a database of a website where in said website database contains content capable of being indexed by an internet search engine."[90]  SUS contended that the structure necessary to perform this function was "a combination of a web server, Common Gateway Interface script, website database and form and equivalents."[91]  SUS looked to the specification to support this construction, noting that the specification stated that "[t]he user is provided with an *HTML form and CGI script*…in order to configure the Enabled and Table of Files fields."[92]

        In contrast, Newegg claimed that the proper structure for "means for creating" was not only a website server or surrogate website server but also "the Table of Files, which is a field in the Table of Search Engines…[and] the disclosed server algorithm" that builds the Table of Files and modifies the table's record as content is "added, altered or removed."[93]  Newegg argued that only

---

[89] *See* Shawn P. Miller, "'Fuzzy' Software Patent Boundaries and High Claim Construction Reversal Rates," 17 Stan. Tech. L. Rev. 809, 812 (2014) (concluding that the "Federal Circuit found claim construction error in 44.3% of the opinions involving software patents and 28.3% of the opinions involving non-software patents").

[90] *See* Docket No. 605-1 at 15.

[91] *See* Docket No. 605 at 5-6.

[92] *See* Docket No. 605 at 5-6 (citing 605-1 at 7:18-22) (emphasis in original).

[93] *See* Docket No. 607 at 13.

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES

1    with the addition of the algorithm that explained how the website server and the Table of Files

2    were created and updated could the structure comply with Section 112(f).[94]

3           The court adopted Newegg's construction of the structure for "means for creating" claim.[95]

4    Although the specification described that the user "is provided with an HTML form and CGI script,

5    hereinafter referred to as a CGI program, in order to configure the Enabled and Table of Files

6    fields," the court found this instruction insufficient to describe the requisite structure for means-

7    plus-function claims.[96]   Relying in part on Newegg's expert, the court found that the CGI program

8    was a general tool for allowing data to move between a web client, a web server, and different

9    processes on the web server and so it was only a "general purpose computer" requiring an

10   algorithm to meet the Section 112(f) requirement.[97]

11          The court then looked to the rest of the specification, which describes both the "Table of

12   Files" and the algorithm necessary to create both that table and to update it with changes to the

13   website.[98]   That algorithm explains that the CGI program (a combination of the CGI script and the

14   HTML form) "configure[s]" the "Table of Files" through one of three methods: (1) "[t]he user may

15   list all the resources to be registered manually"; (2) "[t]he user may specify a map page"; or (3)

16   "[t]he user may specify entry points to the web site" at which point "the CGI program will enter the

17   site and spider to all resources referenced on those entry points" and add them to the Table of

18   Files.[99]   The court found this description to be the algorithm necessary to describe what steps the

19   CGI program needed to perform to embody both the "means for creating" and the "means for

20   identifying" terms.

---

[94] *See id.*

[95] *See* Docket No. 632 at 154:11-155:3.

[96] *See* Docket No. 605-1 at 7.

[97] *See* Docket No. 607-1 at Para. 16.

[98] *See* Docket No. 605-1.

[99] *See* Docket No. 605-1 at 7-8.

22

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL
CASE AND AWARD OF FEES

United States District Court
For the Northern District of California

1    Newegg contends that SUS's position that the Table of Files within the Table of Search

2    Engines was not a necessary linked structure had "no foundation" in the "governing law or the

3    facts of the case."[100]  It is true that the court agreed with Newegg that that these database tables

4    were a necessary linked structure and raised the possibility at the *Markman* hearing that it would

5    "get in trouble" if it did not include the database tables.[101]

6    However, this does not mean that the need for these database tables was so "abundantly

7    clear" that SUS's position that they were not required makes this case exceptional.[102]  To the

8    contrary, SUS was not the only party who adopted the position that the Table of Files was not

9    necessary.[103]  Further, the patent states that the Table of Files is "configured" or "built" by the user

10   performing the invention.[104] The fact that claims 6 and 13 but not claim 8 describe "creating a table

11   of files" in the Table of Search Engines database also supports the exclusion of the Table of Files

12   from claim 8.[105]  Taken together, these facts show that SUS's position that the Table of Files could

13   be excluded because they did not perform a function themselves and instead are performed on by

14   being "configured" or "built" was not entirely unreasonable or frivolous.

15

16

---

17   [100] *See* Docket No. 673 at 13 (citing *Octane*, 134 S.Ct. at 1756).

18   [101] *See* Docket No. 676-2 at 75:9.

19   [102] *See* Docket No. 673 at 12.

20   [103] *See* Docket No. 494 at 5.  Defendant Wal-Mart construed the structure for this term as "[a]
21   computer that executes software to (1) create a database with records for web site resources that are
     obtained from either (a) a manually entered list; (b) a specified map page; or (c) a spider crawling
22   from specified entry points of the website; and (2) modify the records in the database when altered,
     removed, or additional content for the web site is found." *See id.*

23   [104] *See* Docket No. 605-1 at 7 (noting that "[t]he Table of Files is a field in the Table of Search
24   Engines database. It is initially *configured by the user* through a CGI program…to list the files the
     user wishes to be registered with this search engine…The Table of Files is a list of the above
25   records. The list *is built* by first obtaining the set of resources the user wishes to maintain and
     register with a search engine") (emphasis added).

26   [105] *See id.* at 15-16.

27
                                                    23
28   Case No.: 5:11-cv-03306-PSG
     ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL
     CASE AND AWARD OF FEES

United States District Court
For the Northern District of California

1        Further, contrary to Newegg's allegation, SUS did not try to justify exclusion of the

2   database tables by urging the court to disregard the requirement to construe MPF claims to cover

3   the structure the specification describes.[106]   At the *Markman* hearing, SUS's counsel stated that the

4   Table of Files were a "specific preferred embodiment"  in response to the court's question about

5   whether it could exclude the Table of Files and Table of Search Engines from its construction.[107]

6   To the extent SUS's comment could be read to imply that the court could construe a MPF claim to

7   ignore a structure that the specification teaches, such a position is clearly objectively unreasonable

8   and without foundation in the governing law of the case.[108]

9        However, this erroneous statement was not the sole support for SUS's assertion that the

10  database tables could be excluded.  In fact, SUS's counsel asserted that the database tables could be

11  excluded because "the way that the database is created and modified is through the CGI

12  program."[109]   And in response to the court's reminder that what was claimed was a means-plus-

---

13  [106] *See* Docket No. 673 at 12-13; *see also* 35 U.S.C. 112(f).

14

15  [107] Docket No. 676-2 at 74:10-25:

16      The Court: But this would certainly suggest that somewhere in this construction, I have to
        explain that the way that this invention works is that there is a Table of Files and a Table of

17      Search Engines. Right?

18      Counsel: Well, I believe there has to be a website database. I don't think there has to be a
        Table of Files and a Table of Search Engines.

19

20      The Court: But isn't the—isn't the inventor teaching this very specific structure, and how
        can I ignore what is clearly linked?

21

22      Counsel: The inventor is giving a specific preferred embodiment, and they go so far as to—

23      The Court: Yeah, but this is a 112(6) claim, right? So—

24      Counsel: I understand that, your honor.

25  [108] *See Octane*, 134 S.Ct. at 1756.

26  [109] *See* Docket No. 676-2 at 74:5-6; *see also id.* at 76:15-17 ("[T]he user enters the files they wish

27  to monitor to create and modify the database using a CGI program.").

28
                                              24

United States District Court
For the Northern District of California

1   function term, SUS's counsel clarified that she did not "believe that the Table of Files and the

2   Table of Search Engines is specifically linked to any of these functions."[110]   SUS's counsel did not

3   make this statement in attempt to "again" urge the court that the database tables were not required

4   because they were only a "specific preferred embodiment."[111]   Rather, by claiming that the Table

5   of Files and the Table of Search Engines were not linked to any functions, SUS's counsel clarified

6   her belief that the database tables were not the "corresponding structure" which the specification

7   linked to the claim.[112]   Viewed in the context of the entire *Markman* hearing, then, the utterance of

8   an unartful statement by SUS's counsel which was later corrected is not sufficient to rise to the

9   level necessary to make this case exceptional.

10         ***Fourth***, SUS's inability to justify its failure to include the Table of Files in its proposed

11   construction for the "means for creating" term upon MPF law does not make this case exceptional.

12   Newegg rightly notes that even if SUS's assertion that did not need to include an algorithm was

13   correct, this assertion would not justify SUS's failure to include these database tables in the "means

14   for creating" term.[113]   The court's construction provided that the structure linked to the claimed

15   function included both the Table of Files and the disclosed server algorithm that builds the Table of

16   Files.[114]   But the inability of SUS's misunderstanding of MPF law regarding algorithms to justify

17   the exclusion does not mean that SUS had "no reasonable basis" to exclude the Table of Files.[115]

18   As stated above, SUS's position that the Table of Files could be excluded was incorrect but was not

19   so frivolous or lacking in support as to make this case one that stands out from others.

20

21   _____

22   [110] *See id.* at 75:18-76:8.

23   [111] *See* Docket No. 673 at 13.

24   [112] *See* Docket No. 676-2 at 76:6-8.

25   [113] *See* Docket No. 673 at 14-15.

26   [114] *See* Docket No. 632 at 154:11-155:3.

27   [115] *See* Docket No. 673 at 14.

28
                                    25
     Case No.: 5:11-cv-03306-PSG
     ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL
     CASE AND AWARD OF FEES

SUS's position that "the generic 'website database' was linked, but that the patent's only disclosed 'website database'" was not a necessary linked structure is also not "ludicrous."[116]  The court acknowledges that the inclusion of additional items in SUS's proposed combination does not negate the fact that this combination also included a "website database."  The court agrees with Newegg that it is difficult to make logical sense of SUS's contention that a generic "website database" is part of the necessary linked structure but the Table of Files disclosed in the patent is not.[117]  Yet, as described above, the facts of the case provided some support for SUS's contention that the Table of Files was acted upon by the user and thus could not perform a function.  Accordingly, SUS's exclusion of the Table of Files from the "website database" term strains credibility but is not so unreasonable as to make this case exceptional.

**Fifth**, SUS's proposed claim construction for the term "website database" does not establish that this case is exceptional.  SUS argued that the "website database" is "simply [a] record of resources on the website" and pointed to the Summary of Invention in the RE'683 Patent.[118]  The Summary of Invention states that "[u]pon initial execution, the software builds a database of the resources on the website" and that "[t]he resources catalogued can be specified by the user, or automatically through spidering function of the software."[119]  The summary further provides that "[t]he database consists of one record per resource indexed on the site."[120]

Newegg argued that SUS's construction was "so vague that it would encompass the website itself" and that Newegg's construction more properly established that the resources on the website are distinct from the website itself.[121]  Newegg also looked to the Summary of Invention,

---

[116] *See* Docket No. 679 at 9.

[117] *See id.* at 8-9.

[118] *See* Docket No. 605 at 5.

[119] *See id.* (citing Docket No. 605-1 at 4:35-39).

[120] Docket No. 605-1 at 4:35-39.

[121] *See* Docket No. 607 at 38.

26

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL
CASE AND AWARD OF FEES

highlighting its description of the database as "consist[ing] of one record per resource indexed on the site" and that "[e]ach record contains fields."[122]

The court construed "website database" as a "record of resources on the website, other than the resources of the website itself."[123]  The court agreed with Newegg's concerns that the website database had to be distinguished from the underlying website to fit within the claims and the specifications in the RE'683 Patent.[124]  The language of the claim in which "website database" appears requires that any construction of the term include a distinction between the website and the resulting database.  The claim states "a means for creating and modifying a database of a web site wherein said website database," which, in conjunction with the language of the Summary of Invention, supports that the "website database" is separate from the underlying resources on the website itself.[125]  The inventor likewise noted during reexamination that "the process in the . . . invention checks a database representing a historical version of a web site against the current version of the Web site to detect changes."[126]

Although the court added a clause distinguishing the "record of resources" from the "resources on the website itself," it found less support for Newegg's position that the term meant a "structure of fields or records built by software that catalogues the resources of a website."[127]  The Summary of Invention references "fields" in describing the database, but the intrinsic evidence does not support that a person of ordinary skill in the art would consider a "website database" to be

---

[122] *See id.* at 607 at 37 (citing Docket No. 605-1 at 4:35-40).

[123] *See* Docket No. 632 at 154:8-10.

[124] *See id.* at 90:25-91:12.

[125] *See* Docket No. 605-1 at 15:28-29.

[126] *See* Docket No. 607-3 at 3.

[127] *See* Docket No. 607 at 37.

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES

limited to a "structure" built by "software that catalogues the resources of a website." Newegg in fact pointed to no other intrinsic evidence to support the extra language in its construction.[128]

Newegg asserts that SUS's position had "non-existent" support based on the "governing law and the facts of the case" because it "contradict[ed] the intrinsic record."[129] However, the court's need to add a clause to SUS's proposed construction to establish that the website and website database were distinct does not mean that the intrinsic record provided no support for SUS's proposed construction. In particular, SUS's construction relied on language from the Summary of Invention which states that "[u]pon initial execution, the software builds a database of resources on the website."[130]

Further, the court's ultimate adoption of a claim construction that incorporated part of SUS's proposed construction also suggests that that SUS's position was not so objectively unreasonable as to be exceptional. And as SUS notes, the Newegg can hardly claim that SUS's proposal of a claim construction that the court did not in its entirety adopt is sufficient to establish exceptionality when the court did not adopt Newegg's proposed construction in its entirely either.[131] As noted above, it is not rare or unique for parties to propose erroneous claim constructions. Accordingly, SUS's claim construction, while incorrect, is not so contrary to the "governing law and the facts of the case" that it makes this case "one that stands out from others."[132]

***Sixth***, Newegg's claim that this case is exceptional because of flaws in SUS's infringement case fails. Newegg claims that SUS's position with regard to the claim term "website database" makes this case exceptional in part because SUS "sought an unsupportable claim construction

---

[128] *See* Docket No. 607.

[129] *See* Docket No. 673 at 18.

[130] Docket No. 605-1 at 4:35-36.

[131] *See* Docket No. 676 at 11-12.

[132] *See Octane*, 134 S.Ct. at 1756.

28

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL
CASE AND AWARD OF FEES

1    position to purportedly justify a phantom infringement position" and because SUS could not assert

2    that it could have proved infringement "even under the Court's construction."[133]  In particular,

3    Newegg contends that in order to prove infringement, SUS needed to show three components: "(1)

4    the current website and its content, (2) the website database (which represents the historical content

5    of the website) and (3) a set of indices of new, deleted or modified content that is derived by

6    comparing (1) and (2)."[134]  Newegg claims that SUS could only contend that Newegg had a

7    website and a sitemap that was a set of indices and thus could only meet components (1) and (3) of

8    its infringement theory.[135]  According to Newegg, SUS took the unreasonable position the website

9    and website database were not distinct from each other so that it could allege that Newegg's

10    website constituted components (1) and (2) of its infringement claim.[136]

11         Even if Newegg is correct that SUS's proposed construction was motivated in part by a

12    desire to support its infringement theory, this does not make this case exceptional because this

13    motivation would not negate the fact that SUS's proposed construction of "website database" was

14    not so erroneous that it makes this case one that stands out from others.  Likewise, Newegg's claim

15    that SUS could not "credibly assert" that it could have proved infringement under the court's

16    construction of website database is not sufficient to justify a finding of exceptionality.[137]  The court

17    recognizes that the exceptionality inquiry imposes "no specific evidentiary burden," and that

18    Newegg is not required to show that it did not infringe in order for the court to find this case

19    exceptional.[138]  But even if Newegg could show that its website did not infringe the asserted patent,

20    the fact that SUS made "infringement contentions [that] lack merit" is not "by itself…enough to

---

[133] *See* Docket No. 673 at 17-18.

[134] *See id.* at 16.

[135] *See id.* at 16-17.

[136] *See id.* at 17.

[137] *See id.* at 18.

[138] *See Octane*, 134 S. Ct. at 1758.

29

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL
CASE AND AWARD OF FEES

United States District Court
For the Northern District of California

1    render a case 'extraordinary.'  Patent litigants often disagree about whether a plaintiff has viable

2    infringement contents after an adverse claim construction and one side is usually wrong."[139]

3            **Seventh**, SUS's settlement behavior does not establish that this case is exceptional. In its

4    previous order, the court noted that "SUS's settlement raises some eyebrows but because its

5    positions were not entirely baseless, its attempts to settle claims early in the litigation for costs

6    lower than the amounts of a defense are not sufficient, alone, to find subjective bad faith."[140]

7    Subjective bad faith is no longer a requirement for exceptionality.  However, under *Octane*, SUS's

8    settlement of some claims early for costs that were lower than the average amounts of defense still

9    does not make this case one that "stands out from others" given that SUS's  "litigating position"

10   was not entirely frivolous or objectively unreasonable.[141]

11           SUS's settlement behavior did not have the "indicia of extortion" that the plaintiff's

12   settlement pattern displayed in *Eon-Net*.[142]  Newegg contends that SUS's settlement behavior

13   "enhances the exceptional nature of the case" in part because it, like the plaintiff in *Eon-Net*, SUS

14   demanded a "quick settlement at a price…far lower than the cost of litigation."[143]  The court agrees

15   that SUS's conduct is similar to that of the plaintiff in *Eon-Net* in the sense that both plaintiffs

16   settled with a number of defendants early in the case at costs lower than average litigation costs.[144]

17

18   ───────────────────

18   [139] *See EON Corp. IP Holdings LLC v. Cisco Sys. Inc.*, Case No. 12-cv-01011-JST, 2014 WL
19   3726170, at *5 (N.D. Cal. July 25, 2014).  SUS asserts that Newegg has waved its claims that the
     case was exceptional because "SUS's infringement case was frivolous or otherwise fatally flawed."
20   *See* Docket No. 676 at 7.  The court does not reach this issue because it holds that Newegg's non-
     infringement arguments do not show that this case is exceptional even if they are not waived.

21
22   [140] *See* Docket No. 665 at 28.

23   [141] *See Octane*, 134 S. Ct. at 1756.

24   [142] *See Eon-Net*, 653 F.3d at 1326.  *Eon-Net LP* is a pre-*Octane* case but is nevertheless instructive
     on the issue of whether SUS's settlement behavior is extortion-like or out of the ordinary.

25   [143] Docket No. 673 at 18 (citing *Eon-Net LP*, 653 F.3d at 1237).

26
     [144] *See Eon-Net*, 653 F.3d at 1326 (noting that Eon-Net filed "nearly identical patent infringement
27   complaints against of a plethora of diverse defendants" with each filing followed by "a demand for

                                                        30

28   Case No.: 5:11-cv-03306-PSG
     ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL
     CASE AND AWARD OF FEES

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

However, unlike cases which were deemed exceptional in part because plaintiffs filed frivolous suites in order to extort settlement fees, here SUS's litigating position was not so contrary to the governing law and facts of the case as to be objectively unreasonable.[145]

The size and structure of settlement agreements may correlate to a litigation position that lacks any substantive strength, but they are not necessarily linked with or an indication of a lack of substantive strength. Rather, patent holders with "meritorious arguments" may reasonably seek "settlements far below the cost of defense, especially if they do not want to spend significant amounts of money to protect their patents."[146] In fact, evidence suggests that it is not uncommon for cases to settle below the average cost of defense.[147] The court does not need to deter SUS's settlement behavior because SUS did not attempt to "to extract a nuisance value settlement by exploiting the high cost imposed on [Newegg] to defend against [SUS's] baseless claims."[148]

SUS's willingness to settle with Newegg for a settlement amount that was lower than the amount it originally claimed is also not sufficient to warrant a finding that this case is exceptional.[149] Newegg claims that this reduction bolsters its assertion that SUS's settlements were based on "phantom metrics."[150] However, as SUS notes, a plaintiff's willingness to lower its

a quick settlement at a price far lower than the cost to defend the litigation"); *see also* Docket Nos. 649-6 to 649-14.

[145] *See, e.g., Chalumeau Power Sys. LLC v. Alcatel–Lucent*, Case No. 11–1175–RGA, 2014 WL 4675002, at *1-3 (D. Del. Sept. 12, 2014) (awarding attorney's fees when plaintiff's "infringement theories and claim construction positions were frivolous" and plaintiff filed "a frivolous lawsuit with the sole purpose of extorting a settlement fee").

[146] *See* Docket No. 665 at 28.

[147] *See* Docket No. 680-2 at 12 (noting that the medium district court patent damages award in 2013 was $1,256,920). As SUS notes, "[i]t stands to reason that median settlement amounts are well below the median damage awards, since settlements are often discounted to reflect litigation risks." *See* Docket No. 676 at 9.

[148] *See Eon-Net*, 653 F.3d at 1328.

[149] *See* Docket No. 649-18.

[150] Docket No. 673 at 19.

31

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES

initial settlement demand does not establish that its settlement behavior was an arbitrary attempt at a shake-down because plaintiffs often have valid reasons for lowering an initial settlement demand.[151]  Such a demand is "rarely an ultimatum" and developments in the litigation and settlements with other parties in the case as well as other factors may have caused Newegg to change its position during the settlement process.[152]  SUS's settlement behavior thus does not rise to the level sufficient to establish that this case is exceptional.

      **Eighth**, the need to advance considerations of deterrence does not warrant a finding that this case is exceptional because the court does not need to deter others from imitating SUS's conduct.[153]  Although SUS's litigating position was ultimately unsuccessful, it was not completely without support in the governing law and facts of the case.  Accordingly, the court rejects Newegg's assertion that it needs to find this case exceptional in order to deter other patent holders from pursuing frivolous claims.[154]

      Likewise, the court does not need to deter others from emulating SUS's decision to dismiss of its claims after the *Markman* hearing.  As Newegg notes, a plaintiff's dismissal of a meritless case after a *Markman* hearing does not cure the plaintiff's decision to pursue such unreasonable litigation up until that point.[155]  Such behavior still should be deterred because at the time of such a dismissal, the plaintiff has already "unnecessarily require[d] the district court to engage in excessive claim construction analysis before it [was] able to see the lack of merit of the patentee's

---

[151] *See* Docket No. 676 at 9.

[152] *See id.*

[153] *See Octane*, 134 S.Ct. at 1756 n.6.

[154] *See* Docket No. 673 at 20-22. Amici Curiae Kaspersky Lab ZAO, Limelight Networks, Inc., QVC, Inc., SAS Institute Inc., and Xilinx, Inc. filed a brief in support of Newegg's motion. *See* Docket No. 680-1.  Because SUS's litigating position was not entirely meritless, the court finds amici's assertion that the court should find this case exceptional in order to deter patent holders from filing meritless suits and forcing nuisance value settlements unavailing. *See id.*

[155] *See* Docket No. 673 at 20-21.

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF FEES

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

infringement allegations."[156]  Dismissal after the *Markman* hearing also presents the risk that some defendants may have already chosen to "settle early in the litigation rather than expend the resources required to demonstrate to a court" that plaintiff's claim constructions are incorrect.[157]  But these risks are minimized here because SUS's litigating position was not entirely without foundation in the factual and legal components of the case.  In fact, courts have found that cases are not exceptional even when plaintiffs dismissed cases later than the stage at which SUS dismissed the case here.[158]  The need to advance considerations of deterrence thus weighs against a finding that this case is exceptional.

## IV.

Because the court finds that, considering the totality of the circumstances, this case is not "one that stands out from others," Newegg's motion for declaration of exceptionality and attorney's fees is DENIED. [159]

---

[156] *See Eon-Net*, 653 F.3d at 1327.

[157] *See id.*

[158] *See, e.g.*, *Kaneka Corp. v. Zhejiang Medicine Co., Ltd.*, Case No. 2:11–cv–02389-MRP-SS, Docket No. 351, at *6-7 (N.D. Cal. May 23, 2014) (denying attorney's fees and rejecting position that that "[i]mmediately following the claim construction, when [plaintiff] should have known that Defendants did not infringe … [plaintiff] was obligated to stop pursuing the case or face paying attorney['s] fees" and noting that ''[t]o hold that [plaintiff] had to give up its infringement suit after claim construction and prior to the trial court's adjudication of the infringement claim would put future plaintiffs in an untenable position."); *Realtime Data, LLC v. CME Group Inc.*, Case Nos. 1:11-cv-6697-KBF, 11-cv-6699-KBF, 11-cv-6702-KBF, Docket No. 921, at *3 (S.D.N.Y. June 24, 2014) (''[Defendants] believe that plaintiff should have given up its case following the Court's claim construction; that it did not do so and ultimately lost on summary judgment does not itself amount to unreasonable or baseless conduct.").

[159] *See Octane*, 134 S.Ct. at 1756.

33

Case No.: 5:11-cv-03306-PSG
ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL
CASE AND AWARD OF FEES

1    **SO ORDERED.**

2    Dated: February 11, 2015

3

4                                    PAUL S. GREWAL
                                     United States Magistrate Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                        34

28   Case No.: 5:11-cv-03306-PSG
     ORDER DENYING SUPPLEMENTAL MOTION FOR DECLARATION OF EXCEPTIONAL
     CASE AND AWARD OF FEES